BANKERS' MORTGAGE Co. *et al. v.* McMULLAN.

(Division A. May 2, 1932. Suggestion of Error Overruled June 13, 1932.)

[141 So. 331. No. 29847.]

O. B. Triplett, Jr., and R. L. Nichols, both of Forest, and Earle N. Floyd, of Jackson, for appellant.

Earle **N. Floyd,** of Jackson, for appellant.

J. Knox Huff, of Forest, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellee, W. P. McMullan, filed a bill of complaint in the chancery court of Scott county against the appellant, the Bankers' Mortgage Company, and the Fidelity & Deposit Company of Maryland, its surety, seeking to recover the sum of six hundred fifteen dollars, alleged to be due the appellee on account of false representations of fact embodied in statements of appellant's salesman and agent in a transaction involving the sale of installment investment bonds. The Fidelity & Deposit Company interposed a demurrer to the bill of complaint, and thereafter the appellee dismissed his bill as to it. The appellant, the Bankers' Mortgage Company, filed its answer to the bill of complaint, and, on the trial of the cause on the pleadings and proof, the chancellor granted a decree awarding the appellee a recovery of the amount sued for, with attorney's fees and costs; and from that decree this appeal was prosecuted.

The bill of complaint alleged that the appellant is a corporation organized and chartered under the laws of Kansas and domiciled in the city of Topeka, in that state, and authorized to do business in this state as a foreign corporation engaged in the sale of installment investment bonds; that it had qualified under the statutes of this state, known as the "Blue Sky Law," to engage in the sale of stocks, bonds, and other securities of said corporation; and that it entered into a bond in the sum of five thousand dollars with the Fidelity & Deposit Company of Maryland, as its surety, to qualify under the statutes for the sale of its bonds and securities.

It was further alleged that in the month of December, 1930, a duly accredited agent and bond salesman of the appellant company opened negotiations with the appellee for the sale of a four thousand dollar investment bond of said company; that the said salesman offered to sell him a four thousand dollar investment bond dated July 15, 1927, fully paid up to January 15, 1931, with a

cash surrender value of six hundred eighty-eight dollars, and to accept, in exchange or payment therefor, two investment bonds issued by other companies, and then owned by the appellee, on which he had paid the aggregate sum of six hundred fifteen dollars; and that, relying on these overtures and representations of the said agent and salesman, he (the appellee) surrendered his two bonds to the said agent in exchange for a four thousand dollar bond of the appellant to be of the description, date, and value aforesaid.

The bill of complaint further charged that the appellant investment company, with full knowledge of the representations and promises made to appellee by its agent and salesman, issued to him their certain first mortgage savings bond, numbered M1000D, in the sum of four thousand dollars, dated July 15, 1927, and also issued to him its receipt acknowledging payment of a cash consideration of six hundred fifteen dollars for said bond, the said receipt being in words and figures as follows: "The Bankers' Mortgage Company received from W. P. McMullan on account of bond No. M1000D subject to its privileges and conditions. Date paid, 7/15/1929; amount, six hundred fifteen dollars. Received by J. F. Kell, Treasurer."

It was further averred that on March 24, 1931, thereafter, the appellee surrendered, or offered to surrender to the appellant, the said bond for four thousand dollars in consideration of the payment to him of a cash surrender value of six hundred eighty-eight dollars; that the appellant company refused to comply with the representations of its agent by paying the six hundred eighty-eight dollars, the cash value of a bond dated July 15, 1927, and fully paid up to January 15, 1931, but, on the contrary, admitted and offered to pay a cash surrender value of only two hundred eighty dollars.

The bill then alleged that the officers and agents of appellant company induced the appellee to purchase said bond by means of the misrepresentation of material facts

concerning the cash value of said bond, and as to its willingness and readiness to pay a cash value of six hundred eighty-eight dollars upon the surrender of the bond after January 15, 1931; that by virtue of said misrepresentation, the appellee was induced to deliver to the company other bonds upon which six hundred fifteen dollars had been paid; and that, by reason of the facts set forth, the appellee had the right under the statutes to recover from the appellant and its surety the sum paid out by him by reason of the said misrepresentations of material facts concerning the value of the bond purchased by him, and also interest and attorney's fees, for all of which he prayed that a decree be entered. A copy of the bond delivered to the appellee by the appellant company was filed as an exhibit to and part of the bill of complaint.

In its answer to the bill of complaint, the appellant company denied that its salesman offered, and the appellant accepted, a bond fully paid up to January 15, 1931, with a cash value of six hundred eighty-eight dollars; denied that its agent and salesman represented that the bond to be delivered would be paid up January 15, 1931, and have a cash surrender value of six hundred eighty-eight dollars, as alleged in the bill of complaint; and denied that the appellee relied on any promise or representation other than those appearing on the face of the bond, a copy of which was in appellee's possession when the contract of sale was executed. It admitted the issuance of the bond described in the bill of complaint, and also the contents of its receipt for six hundred fifteen dollars set forth therein, but denied that it had any information of any representations, overtures, or promises of its agent and salesman, or that it had any knowledge or information concerning the transaction other than that disclosed by the application for the bond which was signed by the appellee, and was made an exhibit to the answer. The answer alleged that this application, bond, and receipt constituted the sole, only, and

entire contract between the parties, and alleged that the proper cash surrender value of the bond is two hundred eighty dollars, which it tendered to appellee with its answer. The answer also denied that the appellee relied on any misrepresentation of material facts concerning the bond, or that he was induced to surrender the bonds owned by him by reason of any such misrepresentation of fact.

The application for the bond, which was made an exhibit to the appellant's answer, and was proved in evidence, is in the following words and figures:

"I am of legal age and hereby apply to the Bankers Mortgage Company, of Topeka, Kansas, for a four thousand dollar One Hundred Sixty-two Months Installment First Mortgage Savings Bond and agree to pay six hundred fifteen dollars upon the signing of this application and further payments according to the conditions of said bond.

"To be issued in the name of W. P. McMullan for self, Age, Legal. Any statement made by salesman at variance with the bond shall not be binding on the company. The salesman taking this application is authorized to collect no more than the initial payment of sixty-seven dollars and fifty cents for each one thousand dollar bond. Carbon copy of this application to be given to purchaser. Date July 15, 1927        Signature W. P. McMULLAN. United No. 1454                       Occupation: Banker. Receipt of $615 is                        City: Lake

No. 113299

hereby acknowledge.                     County of Scott, State
                                        of Mississippi.

Salesman: Jno. T. Carter.

"If bond is not received within twenty days from date notify company. Payments in advance forty-five dollars per one thousand dollars annually; twenty-two dollars and fifty cents semi-annually; eleven dollars and twenty-five cents quarterly; three dollars and seventy-five cents monthly."

At the time of the execution of the application, the appellee also signed a certificate which reads as follows:

"Bank of Lake

"Lake, Mississippi.

"December 17, 1930.

"To Whom It May Concern:

"This is to certify that I have today exchanged my Investors Syndicate Certificate for a Bankers Mortgage Company Bond and have studied the conditions of each bond thoroughly and understand the conditions of each. I also understand that the new bond is dated as per application July 17, 1929.

WILLIAM P. McMULLAN, Owner.

"Witness, JNO. T. CARTER."

It will be noted that it is stated in the above certificate that the signer understood that the new bond was dated as per application July 17, 1929, while the date named in the application is July 15, 1927. On the trial of the cause, it was shown that, when the bond in question was first delivered to the appellee, it was dated July 15, 1929. The appellee immediately wrote the appellant calling its attention to the fact that the bond should be dated July 15, 1927, and with this letter he returned the bond for correction of the date, and applied for the payment of the cash surrender value of six hundred eighty-eight dollars. The appellant company at first declined to change the date, but thereafter an agent or salesman of the appellant visited the appellee and examined a copy of the application then in his possession, and, upon further negotiations following the report of this salesman, the bond was redated as of July 17, 1927, and returned to the appellee.

The evidence, which included the correspondence between the parties, shows that the appellant company so construed the bond that, under the terms thereof, the payment of six hundred fifteen dollars covered the required initial payment of two hundred seventy dollars and twenty-three monthly installments of fifteen dollars

each, which, after redating the bond, would render it in default for nineteen monthly installments. The appellee contends that the bond, which was executed and delivered in January, 1931, but which was dated July 15, 1927, and read on its face that it was issued in consideration of an initial payment of two hundred seventy dollars and fifteen dollars monthly in advance during the period of one hundred and sixty-two months from its date, was fully paid up to January 15, 1931, which covered forty-two monthly payments, giving the bond, according to a table appearing on the face thereof, a cash surrender value of six hundred eighty-eight dollars. Over the objections of the appellant, the appellee was permitted to testify that appellant's agent so represented to him the terms, provisions, date, and value of the bond to be delivered.

In support of its assignment of error that the evidence of alleged misrepresentations was inadmissible, the appellant relies on that line of cases in this state represented by the case of J. B. Colt Co. v. Odom, 136 Miss. 651, 101 So. 853, which holds that any person has the right to limit the power of his or its agent, and if the right to pass upon the contract is reserved, and the purchaser represents that no outside representations have been made, and that the contract contains all the agreements of the parties, such purchaser will not thereafter be permitted to show statements made by the agent not embraced in the contract, or, in other words, such a purchaser cannot represent to a company with which he is dealing that no representations have been made by its agent to procure the execution of the contract, and thereafter repudiate it on the ground that the agent misled him.

The appellee contends that, under and by virtue of the provisions of the "Blue Sky Law" (article 2, chapter 100, Code 1930), this rule is abrogated in reference to sales of stocks, bonds, or other securities by domestic and foreign investment companies as therein defined, and

that, by virtue of the provisions of section 4186, Code 1930, he has the right to recover from the appellant all money which he was induced to pay to it by reason of any misrepresentation of its agent or salesman of any material fact concerning the bond purchased by him from it, and also a reasonable attorney's fee for enforcing such recovery.

Article 2 of chapter 100, Code 1930, known as the "Blue Sky Law," being sections 4178 to 4198, inclusive, of the Code of 1930, sets out at length and in detail the rules, regulations, and conditions under which foreign and domestic investment companies may be authorized by the secretary of state to sell any stocks, bonds, or other securities within this state, and provides for the issuance by the secretary of state, to investment companies complying with all the specified regulations and conditions, and whose securities he approves, of a certificate authorizing the sale of such securities. By section 4185, it is provided that: "No such certificate shall be granted to such investment company, for the sale of its stock, bonds or other securities, under the provisions of this article, until the applicants therefor shall have entered into bond for not less than one thousand dollars nor more than one hundred thousand dollars, the same to be fixed by the secretary of state, at not more than ten per cent, of the stocks, bonds or other securities, proposed to be issued by said investment company. The said bond shall be payable to the state of Mississippi, conditioned that the facts set forth in the application for such certificate, and the proof and statements offered to such secretary of state, upon which said application is based, are true, and that they will comply with the provisions of this article in the sale of the stock, bonds or other securities of such investment company, or proposed investment company."

Section 4186, Code 1930, provides for the recovery of any amount paid out on account of misrepresentations of material facts in consummating the sale of stocks, bonds,

and other securities, and reads, in part, as follows: "Any person who shall be induced to purchase any stocks, bonds or other securities, by any investment company or proposed investment company, by the officers, agents, employees or promoters or trustees thereof, by reason of any misrepresentation of any material fact concerning such stocks, bonds or other securities, such person or persons shall have the right to bring suit upon the bond above provided for, and such bond shall be subjected to and security for such person so purchasing such stock, bonds or other securities, provided that such person shall not be entitled to recover more than the money paid, or the actual value of the property given, or the labor performed, in exchange for such stock, bonds or other securities, with legal interest from the date of the payment or the performance of the service, or the transfer of the property, and reasonable attorney's fees. Such suit may be brought in the chancery court in any county in this state."

The evidence is undisputed that the appellee was induced to purchase the bond in question and to exchange therefor two other investment bonds upon which he had paid the sum of six hundred fifteen dollars, upon the representation that the bond to be delivered would be dated July 15, 1927, and would be fully paid up to January 15, 1931, and on that date would have a cash surrender value of six hundred eighty-eight dollars. The application for the bond, signed by the appellee, expressly provided that, when issued, it should bear date of July 15, 1927, and, if the bond was in fact paid up to the actual date of its issuance and delivery, it had, as expressly provided in the table printed on the face thereof, a cash surrender value of six hundred eighty-eight dollars. Upon receipt of the application calling for the issuance of a bond dated July 15, 1927, it is hardly conceivable that the appellant, upon examination of the application, thought or understood that the appellee was purchasing a bond which would be in default for nineteen monthly

payments at the time of its issuance and delivery to him. As evidence of the fact that it did not so understand, it appears that despite the fact that the application expressly called for a bond dated July 15, 1927, for which six hundred fifteen dollars was to be paid, the appellant accepted the application and issued a bond postdated eighteen months; that is, to July 15, 1929. Upon such a bond, the payment of six hundred fifteen dollars, acknowledged by the appellant, would have paid the initial payment of two hundred seventy dollars and twenty-three monthly payments of fifteen dollars as provided on the face of the bond, thereby paying all installments due for a period of five months in advance of the date of its issuance. On the face of the bond as so at first issued, the cash surrender value was only two hundred eighty dollars, the amount tendered to the appellee. However, on demand of the appellee that the bond be dated in accordance with the agreement set forth in the application, and after an agent and salesman had visited and conferred with the appellee, it redated the bond to accord with the requirements of the application.

If only the amount paid, or accepted as cash, by the appellant is to be applied as the initial payment and the payment of monthly installments on a bond dated July 15, 1927, but actually issued in January, 1931, the bond was in default for nineteen monthly installments when issued, which fact, under the provisions of the bond, would automatically destroy, in a large measure, its value, particularly the provisions for death and permanent total disability benefits. It is hardly possible that the appellee understood that he was purchasing a bond which, upon delivery, would be in default for nineteen monthly payments, or the sum of two hundred eighty-five dollars; and his testimony that he was induced to surrender other bonds on the representation that the bond to be received in exchange therefor would be dated July 15, 1927, and be paid up to January 15, 1931, is in accord with reason. Under the provisions of section 4186, Code 1930, above

quoted, a party who is induced to purchase stocks, bonds, and other investment securities by means of misrepresentations of material facts is not entitled to recover on a contract in accord with the facts represented to him, but he is entitled to rescind the contract and to recover the amount he has been induced to pay out by reason of such misrepresentations of fact, and also attorney's fees incurred in effecting such recovery.

Whatever may be the general rule in reference to the introduction of parol evidence to prove misrepresentations of fact in the procuring of contracts afterwards reduced to writing, this statute expressly authorizes rescission of the contract and recovery of the amount paid in reliance upon any false representation of material facts made by any officer, agent, employee, promoter, or trustee of an investment company in effecting a sale of its stocks, bonds, or other securities. In the face of this statute authorizing recovery where any misrepresentation of a material fact induced the purchase of such securities, these investment companies cannot contract to limit the power and authority of their agents in the sale of such securities so as to defeat the effect and purpose of the statute, or defeat their liability to restore any money or property acquired by means of such misrepresentations of material facts by their agents. As to contracts for sale of such securities, the statute which authorizes a recovery for any misrepresentation of material facts which induce a purchaser to part with money, property, or other thing of value, abrogates the parol evidence rule to the extent of permitting proof of the misrepresentation which is relied on as a basis of recovery.

The decree of the court below will, therefore, be affirmed, and the appellee's motion for an allowance of an attoreny's fee for defending this appeal will be sustained. and a fee of seventy-five dollars, one-half of the amount allowed in the court below, will be allowed here.

Affirmed.