IRVING *v.* BANKERS' MORTGAGE CO.

(Division A.   Jan. 1, 1934.)

[151 So. 740.   No. 30796.]

**A. L. Ford,** of Ackerman, for appellant.

**Earle N. Floyd,** of Jackson, for appellee.

Briefs of counsel not found.

**Cook, J.,** delivered the opinion of the court.

The appellant, Frank Irving, filed a bill of complaint in the chancery court of Choctaw county against the appellee, Bankers' Mortgage Company, seeking to recover the sum of two hundred eighty-three dollars and fifty cents, with interest, and reasonable attorney's fees, alleged to be due the appellant on account of false representations of fact made to the appellant by the appellee's agent in a transaction involving the exchange and sale of installment investment bonds. The appellee answered the bill, and, on the trial of the cause on the pleadings and proof, the chancellor entered a decree denying recovery and dismissing the bill of complaint.

The bill of complaint alleged that the appellee is a corporation organized and chartered under the laws of the state of Kansas, and domiciled in the city of Topeka, in that state, and doing business in this state as a foreign investment company under authority granted by the secretary of state of the state of Mississippi as provided by law; that about October 30, 1929, a duly accredited agent and salesman of the appellee company opened negotiations with the appellant for the sale of a five thousand dollars investment bond of said company; that said salesman offered to sell him a five thousand dollar investment bond, dated April 30, 1928, fully paid up to October, 1930, with a cash surrender value of two hundred eighty-three dollars and fifty cents, and to accept in part payment therefor a bond issued to appellant by another company on which he had paid the aggregate sum of two hundred eighty-three dollars and fifty cents; and that relying on these representations of the said agent and salesman, he accepted the offer to surrender his

bond which then had an accumulated cash value of two hundred eighty-three dollars and fifty cents in exchange for a five thousand dollar bond of appellee which was represented to have an equal cash value.

The bill of complaint further alleged that as an inducement to the appellant to accept the proposed exchange of bonds, the said agent of appellee represented that on the date of the exchange, and at all times thereafter, the appellant might surrender the five thousand dollar bond, and collect and receive therefor the sum of two hundred eighty-three dollars and fifty cents in cash, without paying further premiums thereon; that relying on the said promises, overtures, and representations of said agent, he was induced to surrender the bond then owned by him in exchange for the bond of the appellee company.

The bill further charged that thereafter, with full knowledge of the promises and representations of its said agent, appellee issued to appellant its first mortgage savings bond in the sum of five thousand dollars, and also its receipt acknowledging payment of a cash consideration therefor of two hundred eighty-three dollars and fifty cents; that thereafter the appellant offered to surrender the said bond to the appellee in consideration of the payment to him of the cash surrender value of two hundred eighty-three dollars and fifty cents; that the appellee failed and refused to comply with the representations of its agent by paying the said sum, and refused to pay him any sum whatsoever. The bill then alleged that the appellant was induced to purchase said bond by means of the said misrepresentations of material facts made by the agent of the appellee company as to the cash surrender value of the bond, and the appellee's willingness and readiness to pay the same upon the surrender of said bond at any time on or after October 30, 1929, and that by reason of the facts set forth, the appellant had the right under the statutes of the state of Mississippi to recover from appellee the sum paid out by reason

of the said misrepresentations of material facts concerning the value of the bond purchased by him, and also interest and attorney's fees.

The appellee filed its answer to the bill of complaint admitting the exchange of bonds, the issuance of its receipt showing a payment or credit of the sum of two hundred eighty-three dollars and fifty cents to be applied as an installment payment upon the five thousand dollar bond sold to the appellant, but charged that before the issuance of its said bond, it received and accepted an application for the purchase thereof, and issued same in reliance upon express terms, conditions, and representations of the appellant in such application that it was understood that, if its said salesman had made any representations beyond the terms and conditions of the said receipt and application, the same were without the authority, knowledge, consent, or ratification of the appellee, and were outside of the scope of authority of the said salesman. The answer further denied that, within about thirty days after receipt of the said bond, the appellant offered to surrender it in consideration of the payment to him of two hundred eighty-three dollars and fifty cents, but charged the fact to be that appellee expressed no dissatisfaction with the bond until nearly a year after its acceptance by him.

The answer further denied that the bond sold and delivered to appellant had a cash value of two hundred eighty-three dollars and fifty cents, and averred that by the plain terms and conditions thereof it had a cash value of less than one hundred dollars; that if any misrepresentation as to the value or terms of the bond were made by its salesman, the appellee was misled in reference thereto when the appellant signed an application expressly stating the appellant knew that "any statement made by the salesman at variance with the bond shall not be binding on the company," and that the appellee issued the said bond and received in exchange therefor, in lieu

of cash, another bond, in reliance upon the statement and representation so made by appellant. The answer further charged that the entire basis of the contract between the parties is found in the aforesaid application and bond, and that appellant should not be permitted to alter, vary, or contradict the written terms of the said contract.

The appellant testified that he was approached by Joe Tyrone, an agent and salesman of the appellee company, with the proposition to sell him a five thousand dollar investment bond of the appellee, and to take in exchange therefor as a credit for the cash payment thereon, an Investor's Syndicate bond then owned by him and upon which he had paid the sum of two hundred eighty-three dollars and fifty cents; that as an inducement to him to make the exchange, the said salesman represented to him that he would receive as a cash credit on the bond to be issued to him by the appellee, the full payment that he had made on the Investor's Syndicate bond, and that, if at any time thereafter he was unable to make further payments or desired to surrender the bond, the appellee would pay him all that he had paid on the bond with interest; that relying on these statements and representations of appellee's salesman, he surrendered his Investor's Syndicate bond and received in exchange therefor a bond for five thousand dollars issued by appellee upon which was credited the payment of two hundred eighty-three dollars and fifty cents, the amount he had paid on the Investor's Syndicate bond; that shortly thereafter, he offered to surrender to the appellee the bond issued by it, and demanded that it pay to him the sum of two hundred eighty-three dollars and fifty cents, with interest, as had been represented to him would be done upon his request; but that appellee refused to pay him said sum, and denied that it was obligated so to do. The fact that such statements and a representations as to the value of the bond in question were made by its agent and salesman was not denied by the appellee.

In the case of Bankers' Mortgage Co. v. McMullan, 165 Miss. 382, 141 So. 331, it was held that under the provisions of section 4186, Code 1930, "one induced to purchase investment securities by misrepresentations of material facts may rescind contract and recover amount paid and attorney's fees;" and that "investment companies cannot contract to limit authority of agents in a sale of investment securities and thus defeat purpose of statute permitting rescission of contract for misrepresentations." It was there also held that as to contracts for the sale of investment securities, "the statute which authorizes a recovery for any misrepresentation of material facts which induce a purchaser to part with money, property, or other thing of value, abrogates the parol evidence rule to the extent of permitting proof of the misrepresentation which is relied on as a basis of recovery."

These announcements of the court would appear to be controlling in the case at bar unless the applicable statutes are materially different. The transaction and misrepresentation complained of in the McMullan case, supra, occurred after the enactment of our present Blue Sky Law, chapter 100, article 2, sections 4178 to 4198, inclusive, Code 1930, while the transaction involved in the case at bar occurred prior to the adoption of the Code of 1930, and while chapter 97, Laws 1916 (sections 4535 to 4561, inclusive, of Hemingway's 1927 Code), was in force.

In opposition to the view that the case at bar is controlled by the McMullan case, supra, the argument of the counsel for the appellee seems to be that the bill of complaint in the present action does not join as codefendant any surety, does not invoke the provisions of the Blue Sky Law pertaining to the conditions of the bond, and liability of the surety under the bond, required thereby, and, therefore, is not an action under such law.

The Blue Sky Law of 1930, section 4185, Code 1930, provides that the secretary of state may issue a certificate of authority to any investment company to sell its stocks,

bonds, or other securities upon the applicant for such certificate entering into a bond conditioned as therein prescribed, while section 4186 authorizes suit on such bond by any person who shall be induced to purchase any stock, bonds, or other securities of any investment company by reason of any misrepresentation of any material fact concerning such stocks, bonds, or securities, made by an officer or agent of such company. Sections 3, 4, and 6, chapter 97, Laws 1916, have practically identical provisions in reference to the issuance by the secretary of state of a certificate or permit to sell the stock of any applicant corporation, and in reference to suits on the bond required to be executed before the issuance of such a certificate or permit. In order to maintain an action under either the Blue Sky Law of 1930 or chapter 97, Laws 1916, it is not necessary that the suit shall be solely against the surety, or that the surety shall be joined at all. The right of action conferred thereby is against the corporation or investment company whose officers, agents, or employees have induced one to purchase its stock, bonds, or securities by means of any misrepresentation of any material fact concerning such stock, bonds, or other securities, and the bond required to be executed before any such company shall be authorized to engage in any such business is mere security provided ''for such person so purchasing such stock, bonds or other securities.'' The liability of the surety is measured by that of its principal, and a party having a right of action under these statutes may proceed against the principal without joining the surety. In the McMullan case, supra, the suit was originally filed against the Bankers' Mortgage Company and its surety, but upon a demurrer being interposed by the surety, the suit was dismissed as to it and proceeded to final judgment against the principal, the said Bankers' Mortgage Company.

Other than the fact that section 4186, Code 1930, covers the purchase of any stocks, bond, or other securities of

any investment or proposed investment company, while section 6, chapter 97, Laws 1916, expressly covers only the purchase of any stock of any corporation or proposed corporation, these two sections are practically identical, but section 2 of the said chapter 97, Laws 1916, provides that the act ''shall also apply to every person, firm, association, company or corporation that shall either directly or through representatives or agents sell, offer or negotiate for sale within this state, any stocks, bonds or other securities except as herein otherwise provided.'' The exceptions referred to in this section are found in section 14 of said chapter 97, and none of these exceptions or exemptions cover the class of securities involved in the case at bar.

It is thus apparent that in so far as these two statutes confer the right to recover the money paid, or the actual value of the property given, or the labor performed, in exchange for stock, bonds, or other securities, by reason of any misrepresentation of material facts concerning the same, they are substantially the same. The averments of the bill of complaint in the case at bar are substantially the same as those in the McMullan case, supra, and clearly bring the action within the provisions of the said chapter 97, Laws 1916, under which, upon the undisputed proof, the appellant was entitled to recover.

The decree of the court below will, therefore, be reversed, and a decree entered here for the appellant for two hundred eighty-three dollars and fifty cents, with interest, and the cause will be remanded for the assessment of reasonable attorney's fees only.

Reversed.