New Amsterdam Casualty Co. *v.* Wood, et al.

Mar. 3, 1952.

No. 38197 (57 So. (2d) 141)

Watkins & Eager, for appellant.

Lipscomb & Ray, and Hannah, Simrall & Aultman, for appellees.

## Alexander, J.

Bills were filed by six complainants against the receiver of the National Acceptance Corporation, Paul A. Schumpert and the New Amsterdam Casualty Company. Others were named for the purpose of impounding alleged assets of the corporation. The suits were filed pursuant to our Blue Sky Law, Code 1942, Secs. 5360 et seq., and their chief purpose was to enforce bonds issued by the said surety under that law. The suits were consolidated for trial. Decree was rendered adjudicating the liabilities of the surety respectively to the several complainants, all of whom were found to have been induced through misrepresentations by Paul A. Schumpert, the president and manager of the corporation, to purchase varying amounts of common and preferred stock. Subrogation was decreed to the surety but only after all stockholders had been paid. There was no decree against the receiver. Only two issues remain upon this appeal. They are (1) the right of the surety to subrogation to the extent of the amounts paid for common and preferred stock; and (2) whether a bond executed by the surety covered the sale by misrepresentation, of common stock sold.

A chronology of the pertinent acts of the corporation, all of which were done in the year 1947, is as follows: The corporate charter was granted in January; on March 31, the corporation filed its application to sell preferred stock; on April 16 permit was issued by the Secretary of State to sell preferred stock "and none other"; on the same day the surety executed its bond which covered the sale by the corporation of "its stock"; November 13 the corporation made application for permit to sell common stock and on the same day the surety executed its bond covering the sale of its common stock; December 2, permit was issued to the corporation to sell its common stock. On November 16, 1948, the corporation was placed into receivership.

As to the preferred stock no issue remains except, as stated, the right of the surety to subrogation as against

the receiver of the corporation. With respect to the common stock, the chancellor found upon ample testimony that the sales of all such were induced by misrep-. resentation of Paul A. Schumpert. Our inquiry in this regard is therefore narrowed to the obligation of the surety as to sales of common stock sold between the execution of its first bond on April 16, allegedly covering only preferred stock, and the second bond executed November 13.

The first bond dated April 16, 1947, under Code 1942, Sections 5367, 5368, recites that it is executed pursuant to its application under date of March 31, 1947, "for a permit to sell *its stock*". Its obligation was "that said National Acceptance Corporation will comply with the provisions of said Act known as Chapter 88, Laws of 1932, in the sale of *stock* of" said corporation. (Italics supplied.) Let it be repeated that the application for permit, referred to in the bond, was for the sale of "its securities as follows: $————Common Stock, $200,000.00 Preferred Stock", and that the permit covered the sale of preferred stock "and none other."

The foregoing details are important since the surety contends that purchasers of common stock were charged with notice and knowledge of the terms of the permit of April 16. ██ ██ The record shows, and the opinion and decree of the chancellor supports the view, that sales of common stock were induced by an exhibit of the bond to prospective purchasers. What then is the obligation of the surety? Is it measured by the terms of the bond whose recitals are broad enough to cover any stock of the corporation, especially in view of the necessity to construe it most strongly against the surety, or is its obligation limited to the recitals of the permit which are to be read into the bond? After prolonged consideration, we find that the bond, which is not by its terms limited to the sale of preferred stock, and which was the leverage used by the president and agent of the corporation to pry funds from the grasp of investors bemused by its reassuring re-

citals, covers the sale of any stock of the corporation. Regardless of any duty to obligate itself, the surety has done so. No mistake or inadvertence is asserted or sought as a basis for its reformation. It remains exigible according to its terms. McCrosky v. Riggs, 9 Smedes & M. 107, 17 Miss. 107; State v. Harney, 57 Miss 863. We hold, therefore, that the right of the purchasers of common stock to sue upon either or both bonds is established. 66 C.J.S., Notice, sec. 11(b); 23 Am. Jur., Fraud and Deceit, Sec. 163.

 █ Appellant contends, however, that the stock so sold represented merely a sale by the owner of his own holdings. We need not dissect this contention in view of the disclosure that Paul A. Schumpert sold to the complainants stock issued directly by the corporation. The scheme employed was to induce a sale by representations that payments for the stock sold would go into the capital structure of the corporation. Upon payment, however, Schumpert would issue stock out of the corporation's stock book and would thereupon covertly cancel certificates of his own, reissuing the new stock in lieu thereof. None of the proceeds from such sales progressed beyond the hands of Schumpert. He had, upon organizing the corporation, been issued 37,500 shares of common stock in payment of organizational expenses allegedly incurred by him and for other asserted considerations. The value of such stock was fixed at ten cents per share and was sold by its president at prices as high as ten dollars per share. He also purchased stock from other stockholders and resold it at substantial profits, using the subtle devices above described.

We do not, for the reasons just stated, examine whether the corporation would be equally liable for the sale and transfer by Schumpert of his own stock in the open market. In this connection, in view of the necessity for a remand of the cause, it is not out of place to call attention to Code 1942, Sec. 5361, which defines a dealer as ''every person or company, other than an agent, who shall, in

this State, engage either wholly or in part in the business of selling, offering for sale, negotiating for the sale of, otherwise dealing in any security issued by others, or of underwriting any issue of such securities, or offering them for sale to the public''; and an agent as ''every person or company employed or appointed by an investment company or dealer, or any other person who shall, within this State, whether as an employee, or otherwise, for a compensation, sell, offer for sale, negotiate for the sale of, or take subscriptions for any security.'' Section 5372 defines, for the purpose of registration and permit, who is a dealer, but includes also the following language: ''The term 'dealer' shall not include an owner, nor issuer, of such securities so owned by him when such sale is not made in the course of continued and successive transactions of similar nature, nor one who, in a trust capacity created by law, lawfully sells any securities embraced within such trust.'' See also 53 C.J.S., Licenses Sec. 74, p. 758.

Section 5368 authorizes suit upon the bond by ''Any person or persons who shall be induced to purchase any stocks, bonds, of (sic) other securities, by any investment company or proposed investment company, by the officers, agents, employees or promoters or trustees thereof, by reason of any misrepresentation of any material fact concerning such stocks, bonds or other securities, shall have the right to bring suit upon the bond above provided for, * * *.'' The foregoing references are merely discussions and are not a part of our decision.

We are of the opinion that the surety is entitled to subrogation as against the receiver to the extent of all claims paid by it pursuant to the obligation of its bonds. Code 1942, Sec. 257. The record indicates that there may be other purchasers who have not brought actions under the bond. It would be inequitable and destructive of the purposes of the bond and our Blue Sky Law to compel exoneration and indemnification by the corporation or its receiver until all claims rightfully due

have been paid. In this connection, it should be noted that the corporation executed an indemnity agreement to the surety. Yet to allow this agreement to prime the claims of complainants would likewise nullify the Act.

The final decree merely adjudicated the respective liabilities of the surety to the complainants. Upon remand, liability of the Natural Acceptance Corporation or its receiver should be adjudged. ██ ██ Under our Blue Sky Law the principal is liable if the surety is liable. Irving v. Banker's Mtg. Co., 169 Miss. 890, 151 So 740. See also 50 Am.Jur., Suretyship, Sec. 30. In Banker's Mtg. Co. v. McMullan, 165 Miss. 382, 141 So. 331, the cause, after dismissal against the surety, was allowed to proceed against the principal. Both parties cite the latter case to support views that the absence of any mention of liability of a surety for the sale by an agent of his own stock implies a purpose, respectively to exclude such coverage and on the other to include it. We find in the case no relevancy except its recognition of the right to sue the principal and also of the principle that a corporation may not under our statute limit the authority of its agents in the sale of its stock. This latter holding is in point against the contention of appellant that Schumpert's knowledge and fraud may not be attributed to the corporation.

The foregoing conclusions, though concise, decide the case upon its merits despite the fact that the record is a formidable one and the briefs unusually comprehensive.

A gesture of dissent is made that the receiver has been sued without permission of the supervisory court. The protest is untenable. He was made a party in the cause before the same court which appointed him, took full part in the defense and was examined at some length by the chancellor.

██ ██ There remains the contention of appellant that an excessive recovery has been allowed. The decree adjudicates claims totaling $12,291.68. These amounts include interest and attorneys' fees which is proper.

However, under Code 1942, Sec. 5368, the total of all recoveries may not exceed the face amount of the two bonds which total $15,000. One of the purposes of a remand of the case is to allow recognition of this limitation which should take proper account of any payments already made to the purchasers of preferred stock, as well as the rights of any other stockholders whose rights may be adjudicated. In this connection there should be a canvass as to the entire amount of preferred and common stock sold with special regard to the respective dates of the two bonds. Under the first, a recovery of all common and preferred stock may be allowed not to exceed the face amount of $10,000. Under the second bond of $5,000, recoveries up to that amount may be allowed but only for common stock sold after its date.

By way of summary, the decree as to the liability of the surety for the losses to the purchasers of all stock sold by misrepresentation is affirmed. Subrogation is allowed the surety in the remote event only that the corporation or its receiver may have resources on hand after payment of the claims of the defrauded stockholders. The right of the surety to proceed against the corporation or its receiver is upheld both upon the doctrine of subrogation or the indemnity agreement, subject, however, to the conditions stated immediately above. In no event shall recoveries against the surety, which may include interest and attorneys' fees, exceed the sum of $15,000.

Affirmed in part, reversed in part and remanded.

**Roberds, Hall, Holmes** and **Arrington, JJ.**, concur.