Eunice V. JOHNSON et al., Plaintiffs-Appellees, Cross-Appellants,

v.

Mark YERGER, Defendant-Appellant, Cross-Appellee,

J. D. Wilson and Kenneth H. Tribble, Defendants-Cross-Appellees.

No. 77–2886.

United States Court of Appeals, Fifth Circuit.

Feb. 29, 1980.

Rehearing Denied March 27, 1980.

James A. Becker, Jr., Velia Ann Mayer, Jackson, Miss., for defendant-appellant, cross-appellee.

Bernard W. N. Chill, Luke Dove, Jackson, Miss., for plaintiffs-appellees, cross-appellants.

Before SIMPSON, CHARLES CLARK, and FRANK M. JOHNSON, Jr., Circuit Judges.

CHARLES CLARK, Circuit Judge:

The plaintiffs as owners of securities purchased by Eunice V. Johnson[1] brought this action against Mark Yerger, J. D. Wilson, and Kenneth H. Tribble in the United States District Court for the Southern District of Mississippi, alleging that the defendants fraudulently induced Eunice Johnson to purchase 5,000 shares of the common stock of Mississippi Candies, Inc. The complaint alleged violations of §§ 12 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77j, § 10 of the Securities Act of 1934, 15 U.S.C. § 78j, and the Security and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.10b–5. A pendent state claim alleged violations of the Mississippi Securities Act, Miss.Code Ann. §§ 75–71–1 to –57 (1972 & Cum.Supp. 1979).[2] The plaintiffs sought to recover the $4,500.00 purchase price of the securities, legal interest from the date of purchase, and reasonable attorney's fees. The district court, grounding its decision in common law fraud, awarded the plaintiffs $3,500.00 with interest of 8% from October 10, 1973, denied the plaintiffs an award of attorney's fees, and assessed the costs of the district court litigation against the plaintiffs. Yerger appeals. The plaintiffs cross-appeal against all three defendants. Because of the unique manner in which the parties dealt with each other, we must analyze the liability of defendants Tribble and Wilson separately from the liability of defendant Yerger, the dealer who "fronted" the transaction. This separate analysis produces different bases for civil liability under the Mississippi Securities Act, resulting in different measures of damages. The judgment appealed from is, in part, modified and affirmed and, in part, vacated. The action is remanded to the district court for further proceedings consistent with this opinion.

I. Facts

Eunice V. Johnson [Johnson] was an active shareholder in Mississippi Candies, Inc. [Mississippi Candies] from its inception in 1971 and served on the advisory committee of the corporation. Defendant Yerger worked as a broker and dealer in intrastate securities pursuant to a license issued by the State of Mississippi. Defendant Wilson served as a director and treasurer of Mississippi Candies and was employed as a salesman of the corporation's securities. Defendant Tribble promoted, organized, and incorporated Mississippi Candies and served as a director and president of the corporation.

---

1. The plaintiffs are Eunice V. Johnson and her nephews, Forrest A. Johnson, Jr., John D. Johnson, and Fred L. Johnson. In the transaction at issue, Miss Johnson purchased the securities and directed that 1668 shares be issued to Eunice V. Johnson and Forrest A. Johnson, Jr., as joint tenants with right of survivorship, 1666 shares be issued to Eunice V. Johnson and John D. Johnson, as joint tenants with right of survivorship, and 1666 shares be issued to Eunice V. Johnson and Fred L. Johnson, as joint tenants with right of survivorship.

2. The plaintiffs' complaint included both specific allegations under §§ 5371, 5374, and 5375 of the Mississippi Code of 1942, as amended, and a general, all-encompassing prayer for relief under § 5360 *et seq.* of the Mississippi Code of 1942, as amended. These statutory provisions, although in effect at the time of the transaction at issue, have been recodified in their entirety in the Mississippi Code of 1972. This opinion refers to the statutory provisions by their current citation.

In early 1973, Mississippi Candies began to experience extreme financial difficulties. The record supports the district court's finding that, at the time of the challenged transaction, Johnson was aware of the company's precarious financial position. Sometime between February and April 1973, Johnson received a letter from the corporation advising that it was out of operating funds. In August 1973, Johnson attended a shareholder meeting in Jackson, Mississippi. At that meeting, Johnson heard detailed discussions of the corporation's financial condition and was provided with a copy of the corporation's trial balance. Approximately two weeks later, Johnson and some twenty other people attended a meeting in Natchez, Mississippi, at which the company's financial problems again were considered. Throughout this period, the officers, directors, and shareholders of Mississippi Candies actively sought the requisite financial capital to keep the corporation in business.

On September 28, 1973, Wilson, after a series of telephone conversations with Tribble, spoke to Johnson in her Natchez, Mississippi, office. Wilson advised Johnson that 5,000 shares of Mississippi Candies common stock currently were available at ninety cents per share. Wilson represented to Johnson that he was anxious to sell this quantity of stock because it belonged to an estate. Johnson asked Wilson to whose estate the stock belonged. Wilson replied that he did not know because he was dealing through a dealer named Yerger. Johnson told Wilson she would purchase the 5,000 shares of stock at ninety cents per share. Wilson told Johnson that Yerger required that the purchaser sign a statement acknowledging both a desire to purchase the stock and a knowledge of the

financial condition of the company. Wilson drafted and Johnson signed such a statement.[3] On September 28, 1973, Johnson issued her check dated October 1, 1973, for $4,500.00 payable to Mark Yerger. On October 2, 1973, Johnson received three certificates dated September 28, 1973, representing 5,000 shares of Mississippi Candies common stock.

In reality, the 5,000 shares of common stock purchased by Johnson were not part of an estate, but rather previously were owned by Tribble and his wife. Tribble testified that, during his telephone conversations with Wilson, he never specified the source of the 5,000 shares of stock. Indeed, Tribble testified that on September 28, 1973, despite having told Wilson he could obtain 5,000 shares for Johnson at a fixed and specified price, he had no specific stock in mind and intended to purchase the entire 5,000 shares in the secondary market for resale to Johnson. Liquidity problems prevented Tribble from carrying out his intentions. Tribble purchased 2,500 shares of Mississippi Candies common stock in the secondary market through Thomsen Securities Corporation at forty cents per share and supplemented these shares with 2,500 additional shares that were owned by his wife. Yerger testified that he purchased these 5,000 shares of common stock from Tribble as an addition to inventory at a price of eighty-five cents per share and, in what he described as a principal transaction, subsequently sold the stock to Johnson at ninety cents per share.

The record demonstrates that Tribble approached Yerger and requested that he handle the stock transaction. The district court found that Tribble "elected to employ and use Yerger for appearance reasons to consummate the transaction." Tribble's testi-

---

3. The statement took the form of a letter from Johnson to Yerger:

September 28, 1973

Mr. Mark Yerger,
Jackson, Mississippi 39120
Dear Mr. Yerger:

I would like to purchase 5,000 shares of stock at ninety-cents per share ($0.90), which I realize is below the selling price.

I am aware that these shares of Mississippi Candies Inc. is below the selling price and I am also aware of the financial status of the Company and that there are judgments against the Company.

I am in a position to pick this stock up immediately—5,000 shares at a total purchase price of $4,500.00.

Sincerely,
/s/ Eunice Johnson

mony describing Yerger as a conduit through which Tribble acted to effect the stock sale supports the district court finding.

The record shows that Yerger made no affirmative recommendation or suggestion to Johnson that induced her purchase of common stock. However, the record evidences Yerger's knowledge both of Tribble's insider status in Mississippi Candies and of the corporation's precarious financial position. Furthermore, Yerger himself testified that at the time of the stock transaction he knew that half of the shares of common stock sold to Johnson previously had been owned by Mrs. Tribble and half recently had been purchased in the secondary market by Mr. Tribble. The district court found that, in spite of such knowledge, "Yerger voluntarily elected to become a party to the transaction."

Mississippi Candies became bankrupt shortly after Johnson purchased the 5,000 shares of common stock.

## II. Civil Liability

The Mississippi Securities Act requires that an investment company seeking a certificate of authority for the sale of its securities file a surety bond with the Secretary of State. Miss.Code Ann. § 75–71–13 (1972). Persons induced to purchase a security by a misrepresentation of a material fact possess a statutory right to bring suit against this bond. *Id.* § 75–71–25. That section provides in relevant part that:

> Any person or persons who shall be induced to purchase any stocks, bonds or other securities, by any investment company, by the officers, agents, employees or promoters or trustees thereof, by reason of any misrepresentation of any material fact concerning such stocks, bonds or other securities, shall have the right to bring suit upon the bond provided for by § 75–71–13 . . . . .

*Id.* Mississippi case authority makes clear that a purchaser's § 75–71–25 remedy extends beyond the bond itself and permits the imposition of personal liability on those corporate officers and directors who actively make or participated in a misrepresentation of material fact that induces the purchase of securities. *First Mobile Home Corp. v. Little*, 298 So.2d 676, 678–80 (Miss. 1974). However, the same case authority makes equally clear that the § 75–71–25 remedy does not extend so far as to impose personal liability on a dealer or broker who, although actively involved in consummating the challenged securities transaction, personally makes no misrepresentation of a material fact. *Id.* at 683–84.

A review of the evidence presented to the district court demonstrates clearly that Wilson actively made and Tribble actively participated in a misrepresentation of material fact that induced the purchase of securities by Johnson. By misrepresenting to Johnson that the stock was owned by an estate, and thus was available for sale due to the fortuity of a death, these defendants concealed that the chief executive officer of Mississippi Candies, although outwardly seeking financial capital for the financially plagued company, in fact, had chosen to divest himself of a portion of his investment in the corporation. *See generally Lewelling v. First California Co.*, 564 F.2d 1277, 1279 (9th Cir. 1977). In this context, the misstatement of the ownership of the securities offered for sale was a misrepresentation of material fact because there is a substantial likelihood that a reasonable investor would have considered the true ownership important in deciding on his course of action with respect to the transaction. Accordingly, both Wilson and Tribble are civilly liable to the plaintiffs under § 75–71–25. Yerger, however, although actively involved in consummating the challenged securities transaction, incurred no § 75–71–25 liability because he personally made no misrepresentation of material fact to Johnson. *See First Mobile Home Corp. v. Little*, 298 So.2d at 683–84.

The facts adduced at trial also show that Wilson and Tribble each engaged in acts and practices violative of the antifraud provisions of the Mississippi Securities Act.[4]

---

4. The Mississippi Supreme Court apparently has not had occasion to determine whether civil liability based on a violation of § 75–71–43 requires an allegation and proof of scienter.

Miss.Code Ann. § 75–71–43 (1972). That section provides in relevant part that it is an unlawful fraudulent practice

> [f]or any person, in connection with any . . . sale or purchase of securities, . . . either directly or indirectly (1) to employ any device, scheme or artifice to defraud, or (2) to engage in any act, practice, transaction or course of business which operates or would operate as a fraud or deceit upon the purchaser, seller, or investor.

*Id.* § 75–71–43(b). By affirmatively misrepresenting the prior ownership of the Mississippi Candies common stock being offered to Johnson, Wilson engaged in an act that operated as a fraud and deceit upon the purchaser of the securities in violation of § 75–71–43(b)(2). *See* Hodge, *Civil Liability Under the Mississippi Securities Act,* 43 Miss.L.J. 597, 604 (1972). Furthermore, by utilizing Yerger's services to conceal his position, Tribble took affirmative action to perpetuate Wilson's misrepresentation. By so doing, Tribble employed a device, scheme or artifice to defraud in violation of § 75–71–43(b)(1) and engaged in an act that operated as a fraud and deceit upon the purchaser of the securities in violation of § 75–71–43(b)(2).

Johnson, as purchaser of a security whose sale was made in violation of the antifraud provisions of the Mississippi Securities Act, statutorily is entitled to rescind the transaction. Miss.Code Ann. § 75–71–31(2) (1972). That section, in relevant part, provides that "[e]very sale . . . of any security made in violation of any provisions of this chapter shall be voidable at the election of the purchaser, who shall be entitled to recover from the seller in an action at law." *Id.*

The United States Supreme Court has interpreted similarly worded federal legislation as imposing such a requirement. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The complaint in this action, although filed prior to the Court's pronouncement in *Ernst & Ernst,* alleges that the defendants acted with the requisite scienter. Moreover, the record is replete with evidence supporting the allegation. *See generally Felts v. National Account Systems Ass'n, Inc.,* 469 F.Supp. 54, 67 (N.D.Miss.1978); *H. D. Sojourner & Co. v. Joseph,* 186 Miss. 755, 766, 191 So. 418, 421 (1939). We pretermit any ruling on the necessity of scienter under the Mississippi statute.

Yerger, as the seller of the securities, is civilly liable to Johnson under the statutory rescission provisions of § 75–71–31(2). This section requires that the purchaser, as a precondition to recovery under the statutory rescission provisions, "tender to the seller . . . the security sold, in proper form for transfer, together with the amount of all dividends, interest, and other income and distributions received by the purchaser from or upon such security." *Id.* On appeal, Yerger complains for the first time that no proper tender was made. However, the plaintiffs made a legally sufficient tender of the securities to the defendants in paragraphs nineteen and twenty-five of their complaint and no point of lack of tender was raised in the court below. Yerger also complains that the plaintiffs never pled § 75–71–31. This is literally true. However, they pled the predecessor of the statutory section in their complaint, which gave the defendants more than adequate notice of the plaintiffs' claim to rescission. *See* note 2, *supra,* at 955.

## III. Damages

### A. *Tribble and Wilson*

A person induced by a misrepresentation of material fact to purchase securities may recover damages under § 75–71–25, but may not "recover more than the money paid . . . for such stocks, bonds or other securities, with legal interest from the date of payment . . . and reasonable attorney's fee." Miss.Code Ann. § 75–71–25 (1972). By fixing a ceiling on damage recoveries under § 75–71–25, the statutory language appears to permit a substantive damage award of less than the full purchase price of the securities. However, case authority developed under § 75–71–25 uniformly has awarded successful plaintiffs

substantive damages equalling the full purchase price paid for the securities. *See Seaboard Planning Corp. v. Powell,* 364 So.2d 1091 (Miss.1978); *Irving v. Bankers Mortgage Co.,* 169 Miss. 890, 151 So. 740 (1934); *Bankers Mortgage Co. v. McMullan,* 165 Miss. 382, 141 So. 331 (1932). Our examination of these cases coupled with the obvious compensatory nature of § 75–71–25 indicates that, absent special circumstances, a person induced by a misrepresentation of material fact to purchase securities should recover substantive damages under § 75–71–25 equalling the full purchase price of the securities. Accordingly, the plaintiffs in this action are entitled to recover substantive damages of $4,500.00 from those defendants whose liability arises under § 75–71–25.

The plaintiffs also are entitled to legal interest on their substantive recovery from the date of payment. Miss.Code Ann. § 75–71–25 (1972). Under Mississippi law, the legal rate of interest is 6%. *Id.* at 75–17–1. Accordingly, the plaintiffs are entitled to recover interest at 6% on the purchase price of the securities from October 10, 1973.[5]

Additionally, § 75–71–25 expressly provides for an award of attorney's fees to those induced through a misrepresentation of material fact to purchase securities. Mississippi case authority consistently awards attorney's fees in cases arising under this section. *See Seaboard Planning Corp. v. Powell,* 364 So.2d 1091 (Miss.1978); *New Amsterdam Casualty Co. v. Wood,* 213 Miss. 499, 57 So.2d 141 (1952); *Bankers Mortgage Co. v. McMullan,* 165 Miss. 382, 141 So. 331 (1932). The district court erred in failing to award the plaintiffs reasonable attorney's fees against those defendants whose liability arises under § 75–71–25. The district court on remand must determine the proper amount of attorney's fees recoverable by the plaintiffs against Tribble and Wilson.

## B. Yerger

■■■■ The damages recoverable by the purchaser of securities from the seller in cases of statutory rescission are specified by § 75–71–31(2) as "the full amount paid by such purchaser for such security, with interest from the date of purchase." Miss.Code Ann. § 75–71–31(2) (1972). Accordingly, the plaintiffs are entitled to recover from Yerger the full purchase price of the securities, $4,500.00, with interest of 6% from October 10, 1973.

The plaintiffs argue that the district court erred in failing to include reasonable attorney's fees as an item of recovery against Yerger. The American rule is that a prevailing party ordinarily is not entitled to recover attorney's fees unless a statute or contract so provides. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 98 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); *Payne v. Panama Canal Co.,* 607 F.2d 155, 163 (5th Cir. 1979). The district court did not err in determining that Johnson is not entitled to recover reasonable attorney's fees from Yerger. Unlike § 75–71–25, the provisions for statutory rescission do not provide for the recovery of reasonable attorney's fees. *See Hodge, supra* at 613, 626–28. Assuming *arguendo* that the federal securities laws impose substantive civil liability on Yerger, the district court did not err in denying the plaintiffs an award of attorney's fees under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. A discretionary award of attorney's fees to a prevailing plaintiff under § 11 is appropriate only where the defense advanced is frivolous, without merit, or brought in bad faith. *See Aid Auto Stores, Inc. v. Cannon,* 525 F.2d 468 (2d Cir. 1975); *Rucker v. La-Co, Inc.,* 496 F.2d 850 (8th Cir. 1974); *Klein v. Shields & Co.,* 470 F.2d 1344 (2d Cir. 1972). The record fails to disclose the requisite factors necessary to support an award

---

**5.** Implicit in the district court's opinion and judgment is a finding of fact that October 10, 1973, constitutes the date of purchase or date of payment with regard to the challenged transaction. The district court's finding based on conflicting evidence is not clearly erroneous. Fed.R.Civ.P. 52(a).

of attorney's fees under § 11. Accordingly, the district court's refusal to award the plaintiff reasonable attorney's fees as against the defendant Yerger is affirmed.

### IV. District Court Costs

■ Costs of litigation normally are allowed to a prevailing party as a matter of course. Fed.R.Civ.P. 54(d). Here, however, the trial judge, expressly relying on 28 U.S.C. § 1331(b), assessed the plaintiffs with all costs incurred in the district court[6] because they recovered less than $10,000.00. The district court's reliance on § 1331(b) was misplaced. Federal jurisdiction of this action was not predicated upon § 1331. Rather, the plaintiff relied upon the express jurisdictional provisions of the Securities Act of 1933, 15 U.S.C. § 77v, and the Securities Act of 1934, 15 U.S.C. § 78aa. The claims advanced under the Mississippi Securities Act were pendent to that federal securities act jurisdiction. Where the jurisdiction of a federal district court is not based on § 1331(a), a district court may not invoke § 1331(b) as the basis upon which to assess the costs of litigation against the prevailing plaintiff. To decide otherwise would frustrate an obvious congressional intent that suits arising in specialized and particularized areas of law be cognizable in a federal forum regardless of the amount in controversy. On remand, the district court must reconsider the assessment of costs in light of our decision.

The judgment of the district court is, in part, modified and affirmed and, in part, vacated. The case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART AS MODIFIED, VACATED IN PART, and REMANDED.

---

6. The district court originally dismissed this action for lack of jurisdiction. This court reversed and remanded. Costs of that appeal were assessed against the defendants. On this appeal, Yerger argues that the costs of the prior appeal should be retaxed against the

plaintiffs should we determine that he is without civil liability. Because of our disposition of the merits of this action, we do not address this issue.

