UNITED STATES, to Use of FIDELITY NAT. BANK, v. RUNDLE et al.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1901.)

No. 611.

1. CONTRACTOR'S BOND—LIABILITY OF SURETIES.

Sureties on a bond of a contractor, conditioned for payment of persons supplying him with "labor or materials," are not liable to a bank which, under an arrangement to supply the contractor with funds, pays the time checks given the laborers and the orders given the material men; the same being indorsed merely as evidence of payment, without any assignments of the claims being made.

2. ACTION ON BOND—JUDGMENT AGAINST PRINCIPAL.

Judgment by default against the principal in an action on a bond against principal and sureties is, at most, only prima facie evidence against the sureties, who put in issue their liability, and incidentally that of the principal.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

On July 1, 1897, N. B. Rundle entered into a contract with the United States to erect certain buildings near Spokane in the state of Washington, and in pursuance of an act of congress approved August 13, 1894, executed and delivered a bond to the United States in the penal sum of $10,000, conditioned that the said N. B. Rundle should well and truly and in all respects duly and fully observe and perform the contract, and "promptly make full payments to all persons supplying him labor or materials in the prosecution of the work provided for in said contract." The sureties upon the bond were D. W. Henley and F. E. Snodgrass, the defendants in error. The Fidelity National Bank, the plaintiff in error, brought the present action against the defendants in error and N. B. Rundle upon their bond, alleging that during the progress of the work upon the contract numerous persons performed work upon the buildings called for by the contract and furnished materials used therein, and that the said laborers and material men, prior to August 13, 1898, assigned their claims to said bank, the claims amounting to $6,868.71 for materials and $2,603.79 for labor. Rundle made no appearance, and default and judgment were taken against him. The defendants in error answered, denying that the claims had been assigned to the plaintiff in error, and alleging as an affirmative defense that the plaintiff in error, without the knowledge of the defendants in error, entered into an agreement with Rundle whereby it was to wait for the pay on said claims 30 days, or from estimate to estimate as made by the officer representing the government in said contract, and that by such extension of credit the defendants in error had become released from liability upon the bond. Upon the issues so made, the case was tried before a jury, and a verdict was rendered for the plaintiff in error for the sum of $3,115.21 and interest. In the verdict it was specified that the amount so found was upon three certain claims for materials that had been assigned to the plaintiff in error, and $339.45, with interest thereon, for labor which had been paid upon time checks approved and authorized by D. W. Henley, one of the defendants in error. See 100 Fed. 400.

Happy & Hindman, for plaintiff in error.

Henley, Kellam & Lindley and A. G. Avery, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Upon the writ of error it is now contended that the trial court erroneously charged the jury concerning the effect of the extension

of time which was given to N. B. Rundle by the Fidelity National Bank. It is urged that the agreement which was made between Rundle and the bank to extend the time of payment from estimate to estimate as made upon the work was an extension for no definite period, and that therefore it did not operate to release the sureties, and that the agreement to extend was without consideration, and was not binding upon the bank. The transaction between Rundle and the bank is fully set forth in the bill of exceptions. It appears that when Rundle found that the contract was to be awarded to him he went to the president of the bank to make arrangements for a loan of money to help him carry it out. An arrangement was made whereby the bank was to furnish him from five to ten thousand dollars, as might be required, to pay for labor, and to pay what might be needed to carry the work along during the time between each estimate, for which the bank was to receive an assignment of the total amount due upon the contract, so that the money might be paid to the bank, and not pass through the contractor's hands. It was arranged that the labor debts should be paid by time checks, and that the bank should receive its compensation by discounting the time checks 3 per centum. This was the understanding as testified to by all the witnesses. Nothing was said in any of the conversations concerning an assignment of the claims of laborers and material men to the bank, and none of such claims were in fact assigned to the bank, except the three claims mentioned in the verdict. Those were claims for materials which had been furnished the contractor upon the guaranty of the bank, and after payment had been formally assigned to the bank. The time checks for labor were, in form, certificates that the laborer had worked a designated number of days in a month named, at a certain rate per day, stating the amount due, containing upon their face the words, "Fidelity Bank, please pay," and signed by Rundle. They were in effect checks upon the bank drawn by Rundle in favor of the laborers. The whole transaction, as it is detailed by all the witnesses, amounted to an agreement whereby the bank agreed to loan money to Rundle to carry out his contract, and to permit him to check out the loan as required to pay the laborers. When the time checks were paid by the bank they were indorsed as any other checks would have been indorsed by the payees. There is nothing in the circumstances to show an assignment to the bank of any of these time checks for labor or the orders for the payment of material men, or that it was the intention of the bank to take such assignments, or to become substituted to the rights of such payees. The answer of the defendants in error distinctly placed in issue the allegation of the complaint that such accounts had been assigned to the bank. The testimony sustains their denial, and shows that no assignment was made. Nor can it be claimed that the law will raise a presumption of an assignment upon the facts in the case. It is true that an assignment may in some cases be made by parol, and that under certain circumstances the presumption will arise that an assignment was intended solely from the nature of the transaction. But in the circumstances of the present case we discover nothing upon which to rest such

a presumption. The agreement was wholly between the contractor and the bank. The laborers and the material men were not parties to it. They took their checks and their orders to the bank as directed, and were there paid. The checks and orders were indorsed, as evidences of payment, and for no other purpose, and the bank retained them as vouchers. In this there was no assignment. Martin v. Railroad Co., 62 Mich. 458, 29 N. W. 40; Dudley v. Railway Co., 65 Mich. 655, 32 N. W. 884.

If there was no assignment to the bank of any of the claims save those mentioned in the verdict, there could be for the unassigned claims no liability to the bank upon the bond; for the protection afforded by the bond was to such only as might supply the contractor with labor and materials in the prosecution of his work. It did not extend to a bank which might lend money for the purpose of paying for such work and materials. But the plaintiff in error contends that the judgment rendered against the contractor, in the present action is evidence against the sureties of all the facts pleaded in the complaint, and that they cannot now dispute the assignment of the claims. The rule which is sustained by the weight of authority is that a judgment against the principal upon a bond such as that here sued upon is not admissible in evidence against the sureties, except: First, in cases where the bond is conditioned to pay such judgment as may be rendered against the principal; and, second, in cases in which the sureties have had the opportunity to appear and defend in the action against the principal,—and that the judgment, when so admissible, is "evidence against the surety of the fact of its recovery only, and not evidence of any fact which it was necessary to find in order to recover such judgment." Brandt, Sur. (2d Ed.) § 630, and cases there cited. The present case does not come within the letter of the first exception to the rule, nor within the spirit and intent of the second. This is not a case in which the sureties had the opportunity to defend, and failed to defend, an action which was brought against their principal. This is not the ordinary case in which a judgment has first been obtained against the principal, and a second action is brought against the sureties to compel its payment. In such a case the first judgment is held to be evidence against the sureties, for the reason that it is the result of a judicial investigation in which the sureties might have availed themselves of the opportunity to make a defense for their principal. Here the action is brought in the first instance against the principal and his two sureties. The principal, presumably for the reason that he owed the bank the full amount for which the action was brought, and had no defense, made no appearance in the action. Judgment by default was rendered against him. But at the same time that this was done the sureties were in court in the same action with their answer to the complaint denying the assignment of the claims to the bank, and denying, so far as the unassigned claims were concerned, their own, and incidentally their principal's, liability upon the bond. Upon what principle can it be said that the silence of the contractor—his failure to make answer—can be shown in evidence against the sureties upon the very issues

which they had raised both for him and themselves upon their de-nial that certain of these claims had been assigned to the bank? But, in any view of the effect of the judgment against the principal, it could be no more than prima facie evidence against the sureties. Moses v. U. S., 166 U. S. 571, 17 Sup. Ct. 682, 41 L. Ed. 1119; Trust Co. v. Robinson, 24 C. C. A. 650, 79 Fed. 420; City of Lowell. v. Parker, 10 Metc. (Mass.) 309. The evidence which was produced by the defendants in error is more than sufficient to overcome such prima facie presumption. The testimony discloses all the circumstances of the loan from the bank to Rundle, the particulars of their understanding, and the details of the dealing of the bank with the laborers and the material men, and it shows that in fact there was no assignment to the bank of claims other than those which were specified in the verdict.

The view which we take of the question of the assignment of these claims as shown by the record renders it unnecessary to discuss the other questions which are presented. The judgment will be affirmed.