CARR HARDWARE COMPANY, Appellee, v. CHICAGO BONDING & SURETY COMPANY, Appellee et al., Interveners and Appellants.

PRINCIPAL AND SURETY: Liability of Surety—Equitable Assignment. The payment by a bank of a contractor's labor pay roll does not constitute an equitable assignment to the bank *of the rights of the various laborers against the surety on the contractor's bond,* in

the absence of evidence that the laborers *intended* such payment to have such effect. So held where such payment was made by the bank under a secret arrangement with the contractor.

*Appeal from Story District Court.*—H. E. FRY, Judge.

MARCH 8, 1921.

ACTION in equity by interveners, to recover $810 on a bond furnished by a contractor, as principal, and the defendant bonding company, as surety, by virtue of claimed subrogation to the rights of laborers, whose wages interveners had advanced. Judgment and decree dismissing the petition, and taxing costs to interveners. Interveners appeal.—*Affirmed.*

*Lee & Garfield* and *C. W. Garfield,* for appellants.

*R. E. Nichol, Coffin & Rippey,* and *E. H. Addison,* for appellees.

DE GRAFF, J.—The J. B. Evans Construction Company, of Mexico, Missouri, entered into a written contract with the Iowa State Board of Education for the construction of the science building at the Iowa State College of Agriculture and Mechanic Arts, at Ames, Iowa, and furnished a bond, executed by the defendant, Chicago Bonding & Surety Company, whereby the contractor, as principal, and the defendant company, as surety, "are held and firmly bound unto the Iowa State Board of Education, and to all persons who may be injured by any breach of any of the conditions of this bond," and conditioned that:

"The said J. B. Evans Construction Company shall well and truly keep, do and perform each and every, all and singular the matters and doings in said contract set forth and specified to be by said J. B. Evans Construction Company, kept, done and performed at the time and in the manner in said contract specified, and shall well and promptly pay all claims for labor and material furnished for or used in and about the said building and shall save the said Iowa State Board of Education harmless from any and all claim for damages which may arise under said

contract and from any lien or claims for labor and material under the laws of the state of Iowa.''

Plaintiff instituted suit at law to recover value of materials furnished; and subsequently, divers materialmen and laborers, as interveners, filed similar petitions, which were consolidated for the purpose of trial, and by stipulation transferred to equity.

The Story County Bank, a trade name used by Parley Sheldon in conducting a banking business at Ames, then filed its petition of intervention, alleging, in substance, that, by virtue of an oral agreement with the construction company, the pay roll checks issued by it to laborers in its employ should be paid by the bank upon presentment and indorsement by the holders thereof; that this was done; and that, by reason thereof the bank is subrogated to the rights of the laborers by equitable assignment, and entitled to the security afforded by the bond.

The checks, before issuance under this arrangment, were in words and figures, as follows:

"No. . . . . . . . . . .
"J. B. Evans Construction Co.
"Mexico, Missouri.
"Job No. 31 Pay roll check . . . . . . . . . . . . . . . . . . . .1916.
"Pay to . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
            for. . . . . . . . . .Hrs. . . .at. . . . . . . . . . . . . .
"Story County Bank
"Ames, Iowa            J. B. Evans Construction Co.
"W. J. Althaus, Supt.            J. M. Wilson, Aud.''

Neither the surety company nor the laborers had any knowledge of the agreement made between Mr. Sheldon and Superintendent Althaus, and at the time the checks were presented for payment at the bank by the laborers, the holders thereof indorsed in blank, surrendered the check, accepted the money, and did nothing more.

It is further disclosed that, prior to the presentment for payment of these checks at the bank by the laborers, the construction company, as part of the agreement aforesaid, gave to the bank its check, in words and figures, to wit:

"J. B. Evans Construction Co.        No. 4070.
Mexico, Missouri, March 10, 1916.
Mexico Savings Bk.
Mexico, Mo.

Pay to Story County Bank .........................$810.00
Eight Hundred Ten Dollars Only ...................Dollars.

J. B. Evans Construction Company,
Signed:   J. B. Evans.

Countersigned:   J. B. Wilson.''

This check represented a deposit with the bank by the company, with which the bank was to pay the time checks issued to the laborers by the company. It was forwarded in the usual course of business to the Missouri bank for collection, and payment thereon was refused. The company at that time was insolvent, and soon thereafter suspended work on the building, and abandoned the scene of its activities.

Some questions and answers by Parley Sheldon, the only material witness in the case, indicate clearly the theory of intervener bank on this appeal:

"Q.  You assumed that, by keeping these checks, you have an assignment of the laborer's claim?   A.  Yes, sir.   Q.  And that you stand in the same situation that the laborers, do you, with regard to this case?   A.  Yes, sir.   Q.  You are asking now that the bonding company be held liable because you are a laborer, having taken the laborers' place by an assignment of the claim?   A.  I claim I stand in the same light as the laborers did stand, by having taken an assignment of their claim. I did not have any special arrangement with the laborers.   Q.  You did not have any arrangement with Mr. Gilcrest to pay his check marked Exhibit B?   A.  But we advanced him the money.   Q.  You did not have any arrangement with him?   A.  No, sir.   Q.  You did not have any arrangement with any payee in any check?   A.  No, sir, I could not say we had.   Q.  You do not claim that you had?   A.  No, sir.   I do not presume we had. The arrangement was with the representative (Mr. Althaus) of the Evans Construction Company.''

Under these facts and circumstances, is the intervener bank subrogated to the rights of the laborers against the surety

by virtue of a legal or equitable assignment, and therefore entitled to the security afforded by the bond?

I.   An assignment may rest in parol; and, under certain circumstances, a presumption will exist that an assignment was intended, solely from the nature of the transaction.

The pay checks in question were assignable, but not negotiable instruments.  They were indorsed by the laborers in blank, when presented for payment, but without any knowledge of Sheldon's agreement, and clearly without any intent on their part to assign their rights against the bond company.  Suppose laborer Gilcrest had presented his check to some other bank at Ames, and had been paid, would the intervener bank occupy a vantage ground not possessed by the other bank?  If so, it must be by virtue of the secret agreement between the construction company and Sheldon, as neither the surety company nor the laborers had requested Sheldon to advance a dollar on behalf of a laborer, and neither knew that such an arrangement had been made by Sheldon.

In *Small v. Smith*, 120 Minn. 118 (139 N. W. 133), the holder of a time check "sold or assigned to the plaintiff the indebtedness so owing to him, and at the same time indorsed in blank his time check and delivered it," and under these facts it was held:

"This indorsement was, in effect, a legal assignment in writing of the claim of the assignor."

In *Leach v. Hill*, 106 Iowa 171, the payee, Hill, and the indorsee, Leach, "*intended* and *understood* that all rights which Hill had growing out of the transaction were to pass to the plaintiff."  The laborers in this case did not so *intend or understand*.

II.   When a person lends money in good faith to pay off prior liens, with the understanding that he is to have the first lien on the land, equity will require the first lien to be kept alive, if necessary to protect the lender.  No stranger is brought into a case of this character.  No attempt is made to enforce rights against the original mortgagee.  It is simply a subrogation to the lien of the mortgagee.  To illustrate:  A advances money to B, the husband of C, to purchase a note and mortgage executed by B and C.  Instead of securing an assignment of

the note and mortgage, as agreed, B permitted the note to be destroyed, and the mortgage to be canceled of record. As soon as he discovered this mistake, B offers to execute a new note and mortgage to A, but C, the wife, refuses to sign. Equity properly holds that A is entitled to have his claim established as an equitable lien upon the real estate. See *Heuser v. Sharman,* 89 Iowa 355; *Kent v. Bailey,* 181 Iowa 489; *Lee v. Newell,* 96 Neb. 209 (147 N. W. 684); *Watson v. Bowman,* 142 Iowa 528.

If the intervener bank had an agreement with the laborers of the construction company that they were to assign their claims, together with their rights against the surety, and, through mistake or fraud, the laborers canceled their claims, then the bank would be entitled to equitable subrogation to the rights of the laborers against the bonding company.

III. Colloquially expressed, the construction company said to the intervener:

"My home is in Mexico, Missouri. I have money there in a bank. I haven't any cash in Ames to pay my labor. Will you accept my check on my home bank, give me credit on your books, and honor my labor pay roll?"

The bank answered, "I will." It did.

One who loans or advances money to a contractor to pay for labor or material for an improvement is not entitled to a mechanic's lien upon the improvement, or to recover upon the contractor's bond; nor is such person subrogated to the rights of the laborers or materialmen whose claims are paid with the money. *United States v. Rundle,* 107 Fed. 227; *Hardaway v. National Surety Co.,* 211 U. S. 552 (53 L. Ed. 321); *Godeffroy v. Caldwell,* 2 Cal. 489 (56 Am. Dec. 360).

It makes no difference whether a bank pays a check of the construction company in cash or extends credit. It is either cash or deposit. The intervener accepted the check of the company, believing it would be honored by the drawee. It was not honored, and the company is liable to the intervener for money had and received. The principal may not bind his surety to a new and different obligation or liability from that covered by the bond.

In order that a surety company can be bound for debts, dues, and demands incurred by its principal in performance of his

work contemplated by the contract, it must be stipulated in the bond. An acceptance of a check by a creditor is not necessarily a payment of the debt or claim; but, if the check is presented to a bank and paid, it then constitutes payment. The laborers' claims evidenced by the pay checks were paid; and, unless there was some act constituting an assignment to the paying bank of rights and claims of the holders thereof against the surety, the debt owed to the laborers was extinguished as to all parties. If subrogation exists, it must have had its origin at the time the pay checks were cashed, and not six days thereafter, when it was discovered that the intervener was in possession of a worthless check, given by the contractor to pay his labor claims. The facts negative the inference or presumption that an assignment was intended or understood.

In the case of *United States v. Rundle,* 107 Fed. 227, 228, it is said in the opinion:

"The time checks for labor were, in form, certificates that the laborer had worked a designated number of days in a month, named, at a certain rate per day, stating the amount due, and containing upon their face the words, 'Fidelity Bank, please pay,' and signed by Rundle. They were, in effect, checks upon the bank, drawn by Rundle in favor of the laborers. The whole transaction, as it is detailed by all the witnesses, amounted to an agreement whereby the bank agreed to loan money to Rundle to carry out his contract, and to permit him to check out the loan as required to pay the laborers. When the time checks were paid by the bank, they were indorsed as any other checks would have been indorsed by the payees. There is nothing in the circumstances to show an assignment to the bank of any of these time checks for labor, or the orders for the payment of material-men, or that it was the intention of the bank to take such assignments, or to become substituted to the rights of such payees. * * * *The agreement was wholly between the contractor and the bank.* The laborers and the materialmen were not parties to it. They took their checks and their orders to the bank, as directed, and were there paid. The checks and orders were indorsed as evidences of payment, and for no other purpose."

True, it is only by virtue of the laborer's right to receive pay from the contractor that he has any right assertable against

the bond as a contract made for his benefit. His right against the bond is ancillary to and dependent upon his right against the contractor. An assignment of the latter right operates as an equitable assignment of the former. In the instant case, howeve there was no formal assignment, or assignment by parol, and the facts do not justify a presumption that an assignment was intended.

The judgment entered by the trial court is correct, and therefore is—*Affirmed.*

Evans, C. J., Preston, Stevens, and Arthur, JJ., concur.

Weaver, J., dissents.