ROBERT L. LEACH, State Superintendent of Banking, Appellee, v. TREYNOR SAVINGS BANK, Appellee; JOHN SCHMIDT, Administrator, Appellant.

**BANKS AND BANKING:** Deposits—Assignment—Acts Constituting. An executed agreement between a bank depositor and an administrator (who was cashier of the bank) and an estate debtor that, in order to discharge the estate debtor, the depositor will surrender his

pass book to the administrator and accept the note of the estate debtor for the full amount of the deposit, works a complete assignment of said deposit to the estate and gives said estate *the status of a general depositor* to the full amount of the assigned deposit; and this is true even though the bank books fail to show the full amount of the assigned deposit or any formal transfer thereof to the estate.

Headnote 1:  7 C. J. p. 866.

Headnote 1:  2 R. C. L. 616.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

MAY 3, 1927.

A claim for preference as a depositor in the distribution of the assets of an insolvent state bank was allowed for only a portion of the amount claimed, and the claimant appeals.—*Reversed and remanded.*

*Tinley, Mitchell, Ross & Mitchell,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Charles E. Swanson,* for appellee.

VERMILION, J.—The Treynor Savings Bank became insolvent, and, on May 17, 1923, the state superintendent of banking was duly appointed receiver, and the bank is in process of liquidation. The appellant, the administrator of the estate of Henry Wilken, filed a claim in the receivership proceedings for a preference as a depositor in the bank, in the sum of $6,761.51. The lower court allowed the claim in the sum of $511.51 only. It is conceded by appellant that his proof failed as to an item of $150 of his claim, and his contention on appeal is that he should have been allowed a preference for $6,611.51.

It is unnecessary to go into the details of a somewhat confused account; for it is conceded that the difference between the finding below and the present contention of the appellant arises from, and the case turns upon, the force and effect to be given a single transaction, the facts of which are not in dispute.

At the time of the transaction in question, Dammrow was the cashier of the bank, and was, with the appellant, a joint administrator of the Wilken estate. He was in control of the

business of the bank, and also had the active management of the administration of the estate, and the funds of the estate were, generally speaking, kept on deposit in the bank. He resigned as administrator before the filing of the instant claim.

One Engle was indebted to the Wilken estate in the sum of $9,073, which was due. Dammrow had refused a requested extension of time on this indebtedness, and insisted on its payment. Julius Schmidt, as trustee, had a savings deposit in the bank, which, as shown by the pass book held by him, amounted to $8,189.73. The books of the bank, however, showed a deposit in the account of Schmidt, trustee, of only $510.38. At the request of Dammrow, Julius Schmidt agreed to make a loan to Engle of the amount in his savings account, to enable Engle to pay his indebtedness to the Wilken estate. In pursuance of this arrangement, on March 2, 1922, Engle and wife delivered to Julius Schmidt, trustee, their note for $8,189.73; Schmidt turned the pass book over to Dammrow; and Engle gave to Dammrow, as administrator, his check for $883.27, which, with the amount of the savings account, made up the amount due from Engle to the Wilken estate.

The bank's books show no transfer of any amount from the account of Schmidt, trustee, to that of the Wilken estate, or its administrators, and no deposit to the credit of the latter referable to the transaction of March 2d, unless it be a deposit to the credit of the administrators of $1,073 on March 16, 1922, which appears not to be otherwise accounted for. It is assumed by both parties that this credit, which equals the amount of the savings account in excess of $8,000 and Engle's check, accounts for all of the savings account except $8,000.

We are of the opinion that the case turns upon whether the Wilken estate becomes, as the result of the transaction of March 2d, the owner, by assignment or transfer from Schmidt, trustee, of his savings account in the bank, and that the determination of this question is not materially affected by either Dammrow's relation to the bank or the entries in the bank's books. Dammrow in that transaction was acting as administrator of the Wilken estate. The intention on the part of all parties was for Schmidt, trustee, to loan to Engle $8,189.73, as evidenced by Engle's note, and for Engle to use the amount so loaned, with his own check for $883.27, to pay his debt of $9,073 to the

Wilken estate. This purpose was accomplished by the execution of Engle's note to Schmidt, trustee, and the turning over of the savings account pass book, evidencing the deposit, to Dammrow, as administrator. Neither the bank nor Dammrow, in his capacity as cashier, had anything whatever to do with this transaction.

We do not understand it to be now claimed by the receiver that Julius Schmidt, as trustee, had not deposited in the bank the sum of $8,189.73, which had not been withdrawn; but if this is not, in effect, conceded, it is established by evidence that is uncontradicted, save by the confessedly incorrect books of the bank. There is no other contradiction of Schmidt's testimony that he had had that amount on deposit in the bank since the previous summer. The pass book issued by the bank showed a deposit of that amount, which the bank's books did not show.

It is also clear, from the fact that the bank's books did not show any deposit of that amount at any time, that any misappropriation of the money by the bank, or embezzlement of it by its employees, occurred long before the transaction of March 2d.

If Julius Schmidt had not entered into the transaction with Engle and Dammrow as administrator, and had not parted with his right to the deposit, it could not have been contended, under the facts shown, that he was deprived of the right to the repayment of the amount actually on deposit in the bank, as against the bank, or to a statutory preference as a depositor, as against the receiver, by the failure of the bank to give proper credit on its books, or by the misappropriation or embezzlement of the money deposited.

It is equally clear that Schmidt, trustee, in the transaction with Engle and the Wilken estate, represented by Dammrow, its administrator, did, in fact, part with and transfer to the estate all his right to the deposit, and that the estate thereby acquired whatever right he had. This resulted from the transaction, although there was no formal assignment of the deposit, or order on the bank to pay it to the estate.

"An assignment may rest in parol; and, under certain circumstances, a presumption will exist that an assignment was intended, solely from the nature of the transaction." *Carr Hardware Co. v. Chicago B. & S. Co.*, 190 Iowa 1320.

The transfer or assignment was completed, and was good as between the parties to it. Neither of them contends otherwise, and neither the bank nor its receiver is in a position to question it. It must, of course, be conceded that the bank, without more, was not thereby deprived of any defense it might have had as against Schmidt, trustee, the original depositor. But it must also be true that it did not thereby acquire any right or defense that it did not already possess against Schmidt, trustee. But, as we have seen, the bank had no defense as against the claim of Schmidt, and, therefore, none as against his assignee; and its receiver is in no better position to resist the latter's claim for a depositor's preference.

We may add that there is here no question of a claimed equitable assignment *pro tanto,* arising from the giving of a check. There was an actual assignment by the depositor of the amount of his deposit, whereby he irrevocably parted with all his right thereto, and the assignee acquired whatever and all right which he had. The estate is claiming no greater right than its assignor had. In *Leach v. Mechanics Sav. Bank,* 202 Iowa 899, in discussing the contention that a check was an equitable assignment *pro tanto* of the fund on deposit, we said:

"In each case the inquiry is whether an intention to transfer ownership in the fund has been carried out, so that thereafter the drawer-assignor has no further control over the fund or power of revocation."

The claim for a statutory preference as a depositor should have been allowed in the sum of $6,611.51, instead of but $511.51, as determined by the district court.

The order entered below is reversed, and the cause remanded for action in accordance herewith.—*Reversed and remanded.*

EVANS, C. J., and STEVENS, FAVILLE, and KINDIG, JJ., concur.