**LIPPERT BROS., INC., a corporation, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, a corporation, Defendant,**

**Denver United States National Bank, a National Banking Ass'n, Intervenor.**

**Civ. No. 64–146.**

United States District Court
W. D. Oklahoma.
Dec. 10, 1965.

19. 42 Cal.Rptr. 188, 398 P.2d 380 (1965). Also, Lopez was decided on the same day as was Dorado.

20. See infra note 13.

21. 244 F.Supp. 120 (N.D.Cal.1965).

Leon Shipp, Oklahoma City, Okl., for plaintiff.

James A. Peabody, Oklahoma City, Okl., for intervenor.

Alex Cheek, Oklahoma City, Okl., for defendant.

## DAUGHERTY, District Judge.

In this case, the plaintiff, Lippert Bros., Inc., as a general contractor, sues the defendant, National Union Fire Insurance Company, on a payment and performance bond issued by the defendant, to Western Steel Erector, Inc., (hereinafter called Western), a subcontractor of the plaintiff, on a dormitory project at the University of Nebraska. The plaintiff claims that said subcontractor, so bonded by the defendant, defaulted in its subcontract for the erection of steel on the project which forced the plaintiff to take over and complete the performance of the subcontract. Also, that plaintiff was covered and protected by said bond of the defendant and that plaintiff expended $26,264.20 in completing the said subcontract. The defendant at the trial did not contest the take-over by plaintiff or that the bond of defendant protected the plaintiff in this matter. The defendant did question the amount plaintiff was entitled to recover under the bond in that certain items were not recoverable for various reasons and that plaintiff, prior to default by Western, knowingly made over-payments to Western on estimates, which over-payments the defendant claims should be applied as a credit to any amount found owing herein by the defendant to the plaintiff.

Denver United States National Bank was permitted to intervene herein and by its petition in intervention against the defendant, asserts that it was a named co-obligee in the above-mentioned payment and performance bond issued by the defendant to Western, as principal, with the plaintiff and said intervenor as co-obligees. The intervenor claims that the understanding and agreement between it and the defendant resulting in the intervenor being made a co-obligee on said bond was that the defendant was guaranteeing that Western itself would perform the subcontract and thereby entitle Western to receive some $36,500.00, the amount of said subcontract, which amount in turn would be paid by the general contractor to the intervenor under an assignment of such project proceeds made to the intervenor by Western. Further, that defendant urged the intervenor to lend money to Western which would permit Western to undertake the subcontract and utilize defendant's payment and performance bond on the project, which loans intervenor made. That the amount unpaid and owing by Western to the intervenor is covered and pro-

tected by defendant's payment and performance bond, in view of the failure of Western itself to perform the subcontract, as guaranteed by defendant. That had Western so performed, as guaranteed by defendant, the account of Western with intervenor would have been satisfied in full under and by virtue of said assignment of the project funds to intervenor. Originally the intervenor also made certain claims against the plaintiff but abandoned the same at the start of the trial and it was agreed between all parties that any amounts payable by the defendant under its payment and performance bond involved herein would recognize first priority to the plaintiff for any amount due it, and second priority to the intervenor as to any amount due it, but not to exceed the face amount of the bond for both.

The defendant claims with reference to the intervenor's petition in intervention that the understanding and arrangement of the defendant and the intervenor which resulted in the intervenor being made a co-obligee on the payment and performance bond was not as claimed by intervenor but that same was of no effect or was done only to permit the intervenor to trace any funds which it lent to Western into the hands of laborers and materialmen of Western and then by subrogation to be afforded coverage under the bond for any such amounts it so traces.

By agreement the case was tried to the Court without a jury.

■■ With respect to the controversy between the plaintiff and defendant, the Court finds from the evidence that Western was a subcontractor under plaintiff and defaulted in said subcontract; that the plaintiff is covered by the payment and performance bond issued by the defendant to Western; that plaintiff took over and performed the subcontract of Western and that plaintiff's costs and expenses in completing said subcontract was as claimed in the amount of $26,264.-20, except that said sum should be reduced by the amount of $185.45, representing five duplicated items and one item not paid by plaintiff, and in the further sum of $237.52, representing the value of work expended by subcontract personnel in moving a crane operated by plaintiff which work was not a part of said subcontract. The Court therefore finds that the amount due the plaintiff by defendant for completing said subcontract is in the amount of $25,841.-23. The claim of the defendant for credit regarding workmen's compensation and PL and PD insurance is denied for the reason that the evidence discloses that the plaintiff actually paid for such insurance protection as to the subcontract in the amount of $1,695.69, and that any such insurance previously purchased by Western was never paid for by Western and same was cancelled. Since plaintiff, in fact, paid for the aforesaid insurance coverage it would be a proper completion cost. The claim of defendant for credit for alleged premature payments made on estimates to Western to the prejudice and injury of the defendant is denied by the Court for the reasons, first, that said estimates and amounts paid thereunder were only intended to be estimates and under the record herein and the circumstances involved the estimates submitted by Western were reasonably accurate and payments thereof were made in good faith and the same only being estimates they must be treated as such, and second, that if Western's estimates Nos. 1 and 2 for 352 tons of steel erected were excessive or premature, as claimed by defendant, that the same were not approved or paid by the plaintiff with knowledge at the time that they were excessive or premature, and when later discovered by plaintiff to be excessive the plaintiff brought such fact to the attention of Western and refused to pay estimate No. 3 for 141 additional tons of steel erected as submitted by Western, and third, the defendant has shown no prejudice to it as a result of any overpayments. See 127 A.L.R. 10.

Therefore, plaintiff is entitled to judgment against the defendant in the amount of $25,841.23.

■ With reference to the claim in intervention of the intervenor against the defendant, the Court finds that this controversy must be decided on the basis of the intent and understanding between the intervenor and the defendant regarding the contractual relationship and obligations brought about by the defendant making the intervenor a co-obligee in its payment and performance bond involved herein. 17 Am.Jur.2d, Contractors Bonds, Sec. 3, pages 193 and 194.

In this connection, the Court finds from the evidence and all the facts and circumstances involved that it was the intent, understanding and agreement of the intervenor and the defendant in making the intervenor a co-obligee on the payment and performance bond, that defendant would guarantee to the intervenor, in view of loans to Western, that Western itself would perform the subcontract and thereby entitle the intervenor to receive and apply the proceeds due Western from the subcontract to the extent of its loans to Western under and by virtue of the assignment of such subcontract proceeds from Western to intervenor.

■ The Court further finds under the evidence herein that the defendant urged the intervenor to lend money to Western after the intervenor had rejected a loan application submitted by Western; that this took place prior to the intervenor being made a co-obligee on said payment and performance bond; that defendant knew of the assignment of project proceeds from Western to the intervenor and that the same formed a part of the overall arrangement between the parties; that the defendant was interested in Western being financed by intervenor so that Western could undertake the said subcontract and thereby utilize the payment and performance bond issued or to be issued by the defendant; that the language of said bond calls for the performance of the subcontract by Western, and upon a failure to so perform the defendant, as surety, is obligated to plaintiff for the completion of the job and to the intervenor, as co-obligee,

for the failure to receive the project proceeds under the assignment thereof to intervenor to the extent of intervenor's loan balance with Western. The Court finds from the evidence and all the circumstances existing that such was the intent, understanding and agreement of the parties, and that such intent, understanding, arrangement and purpose appears both logical and reasonable. The Court is unable to adopt the contentions of the defendant that the said co-obligee arrangement was of no effect whatsoever or was effected only to permit the intervenor to trace moneys into the hands of laborers and materialmen and thereby lay claim against the bond for the reasons that such contention is not supported by any evidence on behalf of defendant nor were the loans handled in such fashion. Thus, the Court finds that the contract and arrangement effected between the intervenor and the defendant under the bond was to the effect that Western itself would complete the performance of the subcontract, and that failing this, the bonding company would be obligated to the intervenor for moneys it lent to Western which were not repaid by and through Western performing and the assignment of project proceeds executed by Western to intervenor.

It is true as defendant asserts herein that, as a general rule, a bank which lends money to a bonded contractor or subcontractor is not protected by a payment and performance bond for moneys advanced to the contractor or subcontractor for and used in the bonded project when the same is not repaid even if the moneys are traced to the payment of laborers and materialmen. This is because the bank is not within the purview of the terms and provisions of such a type bond or statutes enacted requiring such a bond. Such statutes are for the protection of laborers and materialmen and not financial houses. And such bonds in referring to laborers and materialmen as the beneficiaries thereof do not include banks in such language. First National Bank of Eufaula v. Southern Surety Company, 61 Okl. 308, 161 P. 539; United States,

to Use of Fidelity Nat. Bank v. Rundle, 9 Cir., 107 F. 227, 52 L.R.A. 505; Rockwell Bros. & Co. v. Keatley, 51 Okl. 783, 152 P. 449. But this is not the situation in this case. In the cases announcing the above rule the bank was not a named co-obligee in the bond involved. Here the bank by an agreement and arrangement with the bonding company had been made and named as a co-obligee in the payment and performance bond involved. The bank is thus brought within the purview of the bond by the fact of being made a co-obligee therein. It then becomes necessary to determine the intent, understanding, agreement and obligations flowing from such act between the bank and the bonding company. The Court has determined this as pointed out above from the evidence and all the facts and circumstances presented. Briefly restated, this is that the bonding company undertook by making the bank a co-obligee of the bond to guarantee to the bank that Western itself would perform the subcontract and thereby earn the $36,500.00 payable therefrom which in turn would be paid direct to the bank by the contractor under the assignment of the said project proceeds from Western to the bank.

In this connection, the Court finds that the intervenor originally lent Western $16,000.00 and thereafter made additional loans in the total amount of $15,900.00, for a total amount lent by intervenor to Western in the sum of $31,900.00. The Court further finds that the plaintiff under said assignment paid to the intervenor on the project involved the sum of $17,537.14, and that the intervenor received for the credit of Western from other sources the sum of $2,459.93. Thus, the Court finds that the bank received $19,997.07 on its total loans to Western in the amount of $31,900.00, resulting then in a balance due the bank in the amount of $11,902.93, plus interest.

The intervenor is therefore entitled to judgment against the defendant in the sum of $11,902.93, with interest, and judgment should be entered accordingly.

The Court further finds that the total amount due the plaintiff from the defendant as herein determined and judgment entered thereon is entitled to be fully satisfied from the face amount of the payment and performance bond herein, and that any balance thereafter remaining in the bond is subject to the judgment to be entered herein in favor of the intervenor against the defendant.

A hearing on the matter of attorney fees and the amount thereof claimed to be allowable herein will be set on motion and notice following which counsel for plaintiff and intervenor will prepare an apppropriate judgment with reference to their respective claims in conformity with the foregoing and any attorney fees which may be fixed for submission to the Court for signature and entry herein.