298 So.2d 676 (1974)
FIRST MOBILE HOME CORPORATION et al.
v.
Travis LITTLE and Barbara Little.
Travis and Barbara LITTLE
v.
Mrs. Helen Grissom WOOD.
No. 47458.
Supreme Court of Mississippi.
April 8, 1974.
*677 Scales & Scales, Derek Parker, Watkins & Eager, Jackson, for First Mobile Home Corp., and others.
Watkins & Eager, P.N. Harkins, III, Jackson, for Fidelity & Deposit Co.
Mitchell, McNutt & Bush, L.F. Sams, Jr., Tupelo, for Travis and Barbara Little.
RODGERS, Presiding Justice.
This is a suit based upon an illegal sale of stock in violation of the Mississippi Securities Law [Mississippi Code Annotated Sections 75-71-1 et seq. (1972)].
The suit was originally filed on June 7, 1971, in the Chancery Court of Lee County, Mississippi, by Travis and Barbara Little against the following named defendants: First Mobile Home Corporation and its surety, Travelers Indemnity Company; First National Investment Trust; First Securities Corporation and its surety, Fidelity and Deposit Company of Maryland; Kenneth Tribble, individually; Helen Grissom Wood, individually; and Denver Wilson, individually. Proper service of process was had upon all of the defendants. Answers were duly filed by all the defendants except First Securities Corporation and Denver Wilson. A pro confesso order was entered against First Securities Corporation and Denver Wilson on January 14, 1972. The Fidelity and Deposit Company of Maryland filed a cross-bill against First Securities Corporation, Denver Wilson, Kenneth Tribble, and Helen Grissom Wood. Denver Wilson and First Securities Corporation failed to answer the cross-bill; therefore, a pro confesso decree was entered in favor of Fidelity and Deposit Company of Maryland against First Securities Corporation and Denver Wilson.
The chancellor heard the evidence introduced by all complainants and the answering parties. He took the case out for study in vacation and decided the issues in favor of the complainants against all the defendants except Helen Grissom Wood. The chancellor determined that Kenneth Tribble, the president of First Mobile Homes Corporation, caused Mr. and Mrs. Little to purchase stock in First Mobile Home Corporation from Helen Grissom Wood by certain false representations. Judgment was entered accordingly against all of the defendants except Helen Grissom Wood. A final decree was also entered in favor of Fidelity and Deposit Company of Maryland against Denver Wilson, but not Kenneth Tribble and Helen Grissom Wood. First National Investment Trust and Denver Wilson did not appeal. Helen Grissom Wood did not file a brief on appeal.
This is what is said to have caused the dispute and litigation between the parties: In December, 1969, Denver Wilson, who was the president of First Securities Corporation and president of First National Investment Trust, and Kenneth Tribble, who was president of First Mobile Home Corporation, contacted Helen Grissom (later) Wood in Tupelo, Mississippi, and employed her to sell the stock of First Mobile Home Corporation as an agent for First Securities Corporation. First Securities Corporation had been employed by First Mobile Home Corporation to sell its stock offered to the public. These three corporations shared offices in Jackson, Mississippi. They also had common offices at different times. It was apparent to the trial judge that Wilson and Tribble were *678 acting together at the time they employed Mrs. Wood. After the suit was filed and subpoena duces tecum had been served upon the defendants for the records of the First Securities Corporation, Mr. Wilson left Mississippi, taking the records of the corporation with him. He is now said to be employed in Canada.
Mrs. Wood met Mr. and Mrs. Little at a New Year's Eve party. They discussed stock investment, particularly the stock offered by Mrs. Wood in the First Mobile Home Corporation. Mrs. Wood later called on Mr. and Mrs. Little and explained the stock in more detail. The Littles advised Mrs. Wood, however, that they did not want to tie up their money in stock that could not be liquidated when they needed the money. Mrs. Wood did not know whether or not the company would repurchase the stock. She promised to find out, and did in fact call Mr. Wilson on the telephone, but since he could not be located, she talked with Mr. Tribble, the president of First Mobile Home Corporation. He advised her that they would furnish the Littles a market for their stock. Mrs. Wood communicated this information to the Littles and told them that the company would repurchase the stock if it became necessary. Whereupon, the Littles issued their check for four thousand dollars ($4,000.00) for two thousand (2,000) shares of First Mobile Home Corporation stock. The defendants Wilson and Tribble, however, issued stock in First National Investment Trust, instead of the stock purchased in First Mobile Home Corporation. The Littles immediately tried to get their money refunded. They contacted Mr. Tribble, the president of the company, who offered the stock, but were unable to reach Mr. Wilson on the telephone. Mr. Tribble first told the Littles that First Mobile Home Corporation and First National Investment Trust had merged. The Littles contacted the Secretary of State, and a short time before suit was filed, they received two thousand (2,000) shares of stock from First Mobile Home Corporation. The representation made by Mrs. Wood for Tribble, that the stock would be repurchased, was never honored.
The first issue presented for decision is the contention that Kenneth Tribble is not liable individually, because he was merely an officer in two or more corporations, and was acting for these corporations and not individually.
Our Court has, however, held to the contrary in the case of Irving v. Bankers' Mortgage Co., 169 Miss. 890, 151 So. 740 (1934). This Court said, in discussing Section 4185, Mississippi Code 1930, which is essentially the same as Mississippi Code Annotated Section 75-71-25 (1972)[1] involved herein:
"In order to maintain an action under either the Blue Sky Law of 1930 or chapter 97, Laws 1916, it is not necessary that the suit shall be solely against the *679 surety, or that the surety shall be joined at all. The right of action conferred thereby is against the corporation or investment company whose officers, agents, or employees have induced one to purchase its stock, bonds, or securities by means of any misrepresentation of any material fact concerning such stock, bonds, or other securities, and the bond required to be executed before any such company shall be authorized to engage in any such business is mere security provided `for such person so purchasing such stock, bonds or other securities.' The liability of the surety is measured by that of its principal, and a party having a right of action under these statutes may proceed against the principal without joining the surety." 151 So. at 743.
It is said in III Loss, Securities Regulation, Ch. 11B(c), at 1681 (2d ed. 1961), that:
"An officer or director (or, for that matter, any agent of a corporation) who actively participates in the commission of a corporate tort is individually liable at common law to third persons injured thereby; sometimes this liability is codified in the state's general corporation statute. Consequently, an officer or director who actively participates in the violation of a provision of the blue sky law which is essentially declaratory of common law  for example, a provision forbidding the sale of securities by fraud  is liable independently of statute."
The text writers have stated this rule as follows:
"A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong ... If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort." 19 Am.Jur.2d Corporations § 1382, at 778-779 (1965).
It is apparent that even if Mississippi Code Annotated Section 75-71-25 (1972) were limited to recovery against the bond, Tribble would still be liable for participating in the commission of a corporate tort. This rule is further illustrated by the following language:
"As a general rule a corporate officer or director is not liable for the fraud of other officers or agents merely because of his official character, but he is individually liable for fraudulent acts of his own or in which he participates. * * *
Directors and officers and agents of a corporation may be personally liable for a fraudulent or illegal issue of stock, and for fraudulent representations inducing subscriptions to corporate stock ..." 19 Am.Jur.2d Corporations § 1384, at 780-781 (1965).
Moreover, Tribble's misrepresentation regarding the repurchase of the stock constitutes actionable fraud. The text writers define this tort as follows:
"As a general rule, one who makes a false representation of a material fact for the purpose of inducing another to act in reliance thereon in a business transaction or sale is liable to the other for the harm caused to him by his justifiable reliance upon the false representation." 37 Am.Jur.2d Fraud and Deceit § 41, at 65 (1968).
Furthermore, in accordance with Irving v. Bankers' Mortgage Co., supra, recovery pursuant to Mississippi Code Annotated § 75-71-25 (1972) is not limited to an action on the bond, but allows an action against the principal as well. This section makes no mention of the liability of specific persons, and research reveals no cases on this point. There is a good article in *680 the Mississippi Law Journal discussing the liability of corporate officers for violations of the Blue Sky Laws, in which the following observation is made:
"Officers and directors of a corporation can be liable under a Blue Sky Law if they participate in the sale of an unauthorized stock or if they participate in making false and fraudulent misrepresentations to induce others to purchase stock. Officers and directors are not personally liable simply because they serve in their respective capacities, but this fact does not relieve officers and directors of pre-existing responsibilities, the violation of which may result in personal liability. In Mississippi, officers and directors would be liable under section 5374(b) only if they actually sold the stock, while liability under section 5371 would arise if the corporation had posted bond under section 5365 and if the officer or director induced the sale of stock through a misrepresentation." Hodge, Civil Liability Under the Mississippi Securities Act, 43 Miss.L.J. 597, 622 (Nov. 1972).
We next consider whether or not judgment against First National Investment Trust was proper. The appellants argue that there can be no recovery against First National Investment Trust pursuant to Mississippi Code Annotated § 75-71-25 (1972). This argument of the appellants appears to be correct, since the aforementioned section applies only to corporations which have complied with the Mississippi Securities Act by applying for a certificate of authority and posting bond. Since First National had not complied with state law in this regard, they cannot be held liable pursuant to Mississippi Code Annotated § 75-71-25 (1972). As stated by Hodge, 43 Miss.L.J. 597, 604:
"This section permits suit only on the investment company's bond which must be posted with the secretary of state in accordance with Section 5365. Therefore, liability exists under 5371 [now § 75-71-25] only when the issuer of the security has complied with the Blue Sky Law and has posted bond."
However, the article goes on to say:
"It can be noted, therefore, that if a security is sold in Mississippi, and was not registered pursuant to the Mississippi Act, the purchaser would have an action for statutory rescission under Section 5374(b) [now § 75-71-31(1)]." 43 Miss.L.J. at 604.
The relevant portions of the statute read as follows:
"It shall [be] unlawful for any investment company or dealer or representative thereof, either directly or indirectly, to sell or cause to be sold, or offer for sale, any stocks, bonds or other securities (except as expressly exempted herein and proper action has been taken to secure said exemption) unless and until said secretary of state has approved thereof and has issued his certificate in accordance with the provisions of this chapter, * * *
* * * * * *
Every sale or contract of sale of any security made in violation of any provisions of this chapter shall be voidable at the election of the purchaser, who shall be entitled to recover from the seller in an action at law, upon tender to the seller of the security sold, in proper form for transfer, together with the amount of all dividends, interest, and other income and distributions received by the purchaser from or upon such security, the full amount paid by said purchaser for such security, with interest from the date of purchase; * * *" Miss. Code Ann. § 75-71-31 (1972).
The key phrase within the statute for imposing liability on First National Investment Trust is "shall be entitled to recover from the seller." (Emphasis added) It is pointed out in Hodge, 43 Miss.L.J. at 612, that "Mississippi is one of the few states limiting actions for statutory rescission to *681 those against the `seller.'" However, the term "seller" is not defined by the Mississippi Blue Sky Laws. Under a similar provision in the Texas Securities Act, "seller" was held to include any link in the chain of the selling process. Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704 (1956).
In a case involving the federal securities laws, it was held that, "As a matter of authority and principle, the issuance by a corporation of its own shares is a `sale' ..." [Ruckle v. Roto American Corporation, 339 F.2d 24, 27 (2d Cir.1964)]. Likewise, in Weitzen v. Kearns, 271 F. Supp. 616, 619 (S.D.N.Y. 1967), the Court stated that "A corporation which issues its shares is a `seller' ..." Since First National Investment Trust issued the first shares to the Littles, it came within the meaning of the term "seller". We hold that the court was correct in imposing liability on the corporation, since the sale of stock was without a certificate of authority in violation of Mississippi Code Annotated § 75-71-31 (1972).
This reasoning also applies to the situation of First Mobile Home Corporation, not only because it was the original "seller" of the shares contracted for by the Littles, but, also, because Mr. Tribble, president of the company, made the misrepresentation for First Mobile Home Corporation, and is, therefore, jointly liable with the corporation. See New Amsterdam Casualty Co. v. Wood, 213 Miss. 499, 57 So.2d 141 (1952); 19 Am.Jur.2d Corporations § 1431, at 825-826 (1965).
We also believe from a review of the testimony in the record, that the chancellor was correct in refusing to give judgment against Mrs. Wood, since she did not make any representations to the Littles, but simply told them what she was authorized to tell them by Mr. Kenneth Tribble.
The appellants argue in their reply brief that even if Mr. Tribble told the Littles that a market would be established for their stock, this statement was not a misrepresentation at the time, but was merely a promise for future fulfillment and did not amount to fraud. They cite Salitan v. Horn, 212 Miss. 794, 55 So.2d 444 (1951). The rule in Salitan does not apply here, because in the instant case the representation made here was made for the purpose of selling the stock and without the statement, the Littles would not have purchased the stocks. In Salitan, the Court said that the rule does not apply "... in some cases, when a contractual promise is made with the present undisclosed intention of not performing it." [212 Miss. at 801, 55 So.2d at 446]. Furthermore, in regard to whether or not a statement is a promise to perform an act in the future of a misrepresentation of existing facts, it is said that:
"[I]n light of the liberal interpretation generally given to the blue sky laws, it may be expected that where there is a question as to whether a given misleading statement is a statement of fact or merely an expression of opinion, it is likely that it will be found to be a statement of fact." 69 Am.Jur.2d Securities Regulations § 102, at 1130 (1973).
The next issue for our determination is the cross-bill filed by Fidelity and Deposit Company of Maryland. It will be recalled that the Littles sued Denver Wilson, president of First Securities Corporation and also First National Investment Trust. A judgment by default was entered against Wilson and his corporation in the beginning of this litigation. At the same time, Fidelity and Deposit Company of Maryland was also sued as the surety of First Securities Corporation. The surety, Fidelity and Deposit Company of Maryland, answered the original suit generally denying the allegations in the original bill of complaint. The chancellor also entered a decree against the surety, Fidelity and Deposit Company of Maryland, at the time the final decree was entered against all the defendants. The Fidelity and Deposit Company of Maryland now contends on appeal *682 that the trial court committed the following errors:
(1) The chancellor erred in holding that a decree pro confesso against First Security Corporation and Denver Wilson was conclusive against Fidelity Deposit Company of Maryland.
(2) The chancellor erred in holding that Fidelity and Deposit Company of Maryland was not entitled to a judgment over against Kenneth Tribble for the amount of judgment, costs and attorneys' fees based upon the theory of implied indemnity.
It is argued by appellant that the decree pro confesso against Wilson and First Securities Corporation does not establish their liability pursuant to the bond. According to Mississippi Code Annotated § 75-71-29 (1972), the required bond is conditioned, "upon the faithful compliance with the provisions of this chapter by said dealer, and by all agents registered by such dealer, as required under the provisions of this chapter ..." It is asserted by appellants that their liability under the bond must be established by evidence independent of the decree pro confesso, and that such evidence cannot be found in the record of this case.
There seems to be no uniform rule as to the effect of a default judgment against the principal on the liability of the surety. This is illustrated by the following statement from Annot., 59 A.L.R.2d 752, § 2 at 754 (1958):
"The authorities are not in agreement as to the effect upon the surety of a default judgment against the principal entered in an action to which the surety was made a party. Some of the authorities hold that under these circumstances the default judgment against the principal is conclusive, or at least prima facie evidence, against the surety. However, other cases reach the opposite result."
Appellants' view is supported by Restatement, Security § 139(3), at 372 (1941), wherein it is said:
"(3) Where, in an action by a creditor against a principal, judgment is obtained by default or confession against the principal, and the creditor subsequently brings an action against the surety, proof of the judgment against the principal is evidence only of the fact of its rendition."
The comment to subsection (3) explains:
"e. The probative significance of a judgment obtained by confession or default is much less than that of a judgment after trial on the merits. Moreover, the arguments of policy and convenience against duplication of trials have little weight where there has not been a determination after consideration of evidence introduced by both sides to a litigation. Such a judgment against the principal does not create a rebuttable presumption of the principal's liability, in an action between creditor and surety." Restatement, Security § 139(3), at 375 (1941).
This view is also supported by other respectable authority; see United States v. Hayes, 369 F.2d 671 (9th Cir.1966); United States v. Rundle, 107 F. 227 (9th Cir.1901); United States v. Pfeiffer-Neumeyer Const. Corp., 25 F. Supp. 403 (E.D.N.Y. 1938); Sutter v. Hill, 101 N.E.2d 502 (Ohio App. 1950).
On the other hand, a default judgment against a principal has been held to be a prima facie evidence of the sureties' liability and is conclusive in the absence of fraud or collusion. Becker v. Koza, 53 F.R.D. 416 (D.Neb. 1971); Escambia Chemical Corporation v. Rocker, 124 Ga. App. 434, 184 S.E.2d 31 (1971); 72 C.J.S. Principal and Surety § 261, at 708 (1951); 50 Am.Jur. Suretyship § 202, at 1039 (1944).
We are of the opinion that a default judgment against a principal is conclusive *683 against his surety, unless it is shown that the default judgment was obtained through consent of the debtor, or collusion so as to be a fraud upon the rights of the surety.
In the instant case, however, the surety was sued jointly with the principal and the surety answered joining issue. It had the same right to defend the action as its principal.
United States v. Rundle, supra, while holding that a default judgment was not conclusive against a surety, stated the exception to the rule as follows:
"[E]xcept: First in cases where the bond is conditioned to pay such judgment as may be rendered against the principal; and second, in cases in which the sureties have had the opportunity to appear and defend in the action against the principal." 107 F. at 229.
The opinion was careful to say: "This is not a case in which the sureties had the opportunity to defend, and failed to defend, an action which was brought against their principal." [107 F. at 229] The surety was also sued in that case.
We hold that the surety, Fidelity and Deposit Company of Maryland, did have an opportunity to defend the action and is liable with the principal, First Securities Corporation, since the evidence is sufficient to bind the First Securities Corporation under the Mississippi Securities Law, supra.
The Fidelity and Deposit Company of Maryland also argues that if it is mistaken in its contention that it is not liable as surety on the pro confesso judgment against its principal, then it is said, Tribble was acting individually and not on behalf of First Securities Corporation, when he made false representations to the Littles.
The chancellor held that Mrs. Helen Grissom Wood was simply acting on the instructions of Kenneth Tribble individually and as officer of all the corporations, including First Securities Corporation.
We are of the opinion that the chancellor was correct under the facts in this case in holding that Tribble was acting for all the involved corporations and that his acts as a dealer were in violation of the conditions of the bond posted by Fidelity and Deposit Company of Maryland. Mississippi Code Annotated § 75-71-29 (1972).
Appellant, Fidelity and Deposit Company of Maryland, contends that it is entitled to a judgment against Kenneth Tribble, since it is being held liable for a wrongdoing of another upon the basis of an implied contract of indemnity.
We are of the opinion that the theory of implied indemnity is applicable to the facts at bar. The rule is explained in 41 Am.Jur.2d Indemnity § 19, at 705 (1968), as follows:
"The right of implied indemnity in contractual cases is based upon a breach of contract by the person against whom indemnity is sought, while in the area of noncontractual indemnity the right rests upon the fault of another which has been imputed to or constructively fastened upon him who seeks indemnity." (Emphasis added)
The chancellor entered a judgment against Wilson in favor of Fidelity and Deposit Company of Maryland, but did not grant it a judgment against Kenneth Tribble. We are of the opinion that the court should have also entered a judgment against Kenneth Tribble in favor of Fidelity and Deposit Company of Maryland because of the unlawful activity of the officers of First Securities Corporation.
The next and final appeal for our consideration is the cross-appeal of Travis and Barbara Little against Mrs. Helen Grissom Wood. Mrs. Wood was named as a defendant *684 in the original bill of complaint. In his opinion, the chancellor stated:
"That this misrepresentation was not that of Helen Grissom Wood and that she is not responsible for it except to the extent that she passed on this misrepresentation made to her by Kenneth Tribble as president of the corporation, ...
* * * * * *
... That a decree herein set out is rendered against all the defendants except Mrs. Helen Grissom Wood, who the court finds made no fraudulent representation of her own, but was simply acting on the instruction of Kenneth Tribble, ..."
The Littles appealed from the chancellor's decree, assigning the following as error:
(1) The chancellor erred in failing to render a decree against Helen Grissom Wood as was done against the other defendants for the reason that Mrs. Wood was a party to a material misrepresentation concerning the stock.
(2) The chancellor erred in failing to render a decree against Helen Grissom Wood regarding the sale of First Mobile Home Corporation stock when she knew prior to the sale that shares of beneficial interest in First National Investment Trust would be issued in the place of First Mobile Home Corporation stock.
(3) The chancellor erred in failing to render a decree against Helen Grissom Wood where the sale was in violation of the certificate of authority issued by the office of the Secretary of State of Mississippi.
The brief of appellants contains a certificate of mailing indicating that a true copy of the brief was mailed postage prepaid to the attorney for the appellee on April 12, 1973. Notice of appeal was properly served on Mrs. Wood on May 5, 1973, but she did not file a brief in this Court.
In the case of United States Fidelity & Guaranty Company v. State, 204 So.2d 852 (Miss. 1967), the same situation existed. The Court said as follows:
"`The failure to file this brief (by the appellee) is tantamount to a confession of error, and will be accepted as such and the judgment of the court below will be reversed, since an answer to the appellant's brief cannot be safely made by us, without our doing that which the appellee, by its attorney, should have done, i.e., brief the appellee's side of the case. This we are not called on to do, therefore the case falls within, and is governed by, W.T. Raleigh Co. v. Armstrong, 165 Miss. 380, 140 So. 527.'" [Quoting from Gulf M. & O. RR v. Webster County, 194 Miss. 660, 13 So.2d 644 (1943)]. 204 So.2d at 852-853.
Accord, Transcontinental Gas Pipeline Corporation v. Rogers, 284 So.2d 304 (Miss. 1973); Jackson v. Walker, 240 So.2d 606 (Miss. 1970); Charles F. Hayes & Associates, Inc. v. Blue, 233 So.2d 127 (Miss. 1970).
The foregoing rule is a good rule and its purpose is, of course, to prevent this Court from having to brief a case for one of the litigants; but where, as in this case, the Court is required to peruse the record many times because of the complicated issues raised by other parties, and the Court finds that the trial court was correct in its ruling, the Court will not reverse the case on the ground that the cross-defendant filed no brief. We think the ruling of the trial court in releasing Mrs. Wood was correct. We hold that there is no merit in cross-appellants' [Littles'] cross-appeal against Mrs. Wood.
The chancellor allowed attorneys' fee for the attorneys for the Littles in the sum of seven hundred and fifty dollars ($750.00), and as is customary in this Court, we will add to the judgment of the trial court one-half (1/2) of the sum allowed as attorneys' fee in the trial court.
*685 We, therefore, hold in this case that the judgment entered in the trial court should be and is hereby affirmed in all respects except  we reverse the decree as to the claim of Fidelity and Deposit Company of Maryland against Kenneth Tribble, and award judgment in this Court in favor of Fidelity and Deposit Company of Maryland against Kenneth Tribble for such sum as it may be required to pay under the terms of its surety bond. We also award an additional attorneys' fee for the attorneys for appellees, Travis Little and Barbara Little, in the sum of three hundred and seventy-five dollars ($375.00).
Affirmed in part, reversed in part, and rendered.
PATTERSON, INZER, ROBERTSON and BROOM, JJ., concur.
NOTES
[1] "Any person or persons who shall be induced to purchase any stocks, bonds or other securities, by any investment company or proposed investment company, by the officers, agents, employees or promoters or trustees thereof, by reason of any misrepresentation of any material facts concerning such stocks, bonds or other securities, shall have the right to bring suit upon the bond provided for by section 75-71-13, and such bonds shall be subjected to and be security to such person purchasing such stocks, bonds or other securities, provided that such person shall not be entitled to recover more than the money paid, or the actual value of the property given, or the labor performed in exchange for such stocks, bonds or other securities, with legal interest from the date of the payment or the performance of the service, or the transfer of the property, and reasonable attorney's fee. Such suit may be brought in the chancery court of the county where the violation occurred or in the county in which the stockholder is domiciled. One or more recoveries upon such bond shall not vitiate the same, but it shall remain in full force and effect, but no recoveries upon such bond shall ever exceed the full amount of same, and upon suits being filed in excess of the amount of the bond the secretary of state may require a new bond, and if the same is not given within thirty (30) days, he may cancel the certificate herein provided for." Miss. Code Ann. § 75-71-25 (1972).